586 F.2d 1007
 Ross A. PHILLIPS, Appellant,
v.
Bob BERGLAND, Secretary of Agriculture, United States
Department of Agriculture, in his official capacity and not
in his Individual capacity, Washington, D. C. and Robert E.
Hampton, Chairman, Civil Service Commission, in his official
and representative capacity and not in his Individual
capacity, 1900 E. St., NW, Washington, D. C. 20415, Appellees.
 No. 77-2234.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 9, 1978.
Decided Nov. 17, 1978.
 
 John R. Goodwin, Charleston, W. Va., for appellant.
 William A. Kolibash, Asst. U. S. Atty., Wheeling, W. Va. (Stephen G. Jory, U. S. Atty., Elkins, W. Va., on brief), for appellees.
 Before BRYAN, Senior Circuit Judge, and RUSSELL and HALL, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 The appellant, employed as a Research Mechanical Engineer, GS-12, in the Forest Service of the United States Department of Agriculture, Morgantown, West Virginia, filed this action in the District Court seeking review of his discharge, as approved in a decision of the Civil Service Commission's Appeals-Review Board (ARB) on February 20, 1976. Both the appellant and the appellees moved for summary judgment on the administrative record. The District Court granted the motion of the appellees for summary judgment and dismissed the action. The appellant appealed. We reverse.
 
 
 2
 The appellant had been employed by the Forest Service for nine years before the incident which lead to his discharge. There is no suggestion by the ARB that during this period of service he had not been a faithful and efficient employee or that his relations with his supervisors and fellow-employees had not been cooperative and cordial. The appellant testified, without contradiction that at no time during his employment had he been disciplined or censured. And, as a matter of fact, the incident resulting in his discharge did not relate to his performance as an employee, it arose purely and simply out of a personal difficulty with a fellow-employee over a private business in which the two had engaged and a debt owed by such private business.
 
 
 3
 The private business out of which the appellant's difficulty with a fellow-employee arose was a retail tire business in Elkins, West Virginia. The business, known as the Elkins Auto Center, was operated as a corporation in which the appellant and one Biller, a fellow-employee, had equal ownership of the stock. For their stock, the appellant and Biller had each paid approximately $10,000. The appellant, however, had advanced from the funds of his three minor sons, approximately $20,000 additional to the corporation. The business was located in a building rented by the corporation from Biller. It was not a successful venture. The reason for its failure is not clear but it was the appellant's belief that Biller was responsible for the business' failure.
 
 
 4
 As the business began to flounder, Biller claimed to have transferred his stock in the corporation to the appellant and to have disassociated himself from the business. The actual date of the assignment by Biller of his stock to the appellant was, however, subsequent to the business' failure and also subsequent to the incident in question. In any event, as the business was failing, Biller began "pushing and pushing" the appellant individually to pay the back rent due him by the corporation. On the Friday before the pertinent incident on Monday, April 9, the tire supplier of the business repossessed all the then stock of the corporation. At that point the corporation had nothing but some few doubtful accounts-receivable and substantial unpaid debts. The appellant was out his $10,000 investment and the $20,000 he had advanced from the inheritance of his minor sons. It was with this background that the appellant reported for work on the morning of April 9.
 
 
 5
 After the appellant had begun work on April 9, Biller went to appellant's office where he found him quite distraught. He immediately began pressing the appellant to pay the back rent due him individually by the defunct corporation in which the two had been involved.[1] Biller emphasized that he expected payment by noon of that day. When the two took their lunch-break the appellant suggested that the two of them go to some place where they could talk in private. They withdrew to "an enclosed stairway separated from the rest of the building," occupied by the local unit of the Forest Service. As they reached the stairway, the appellant, who had been walking behind, threw what the ARB described as a "rope" and what Biller suggested at one point was similar in some respects to "binder's twine" about Biller's neck. What pressure, if any, the appellant applied is not clear. In any event it was not enough to leave any marks on Biller's neck, only enough to cause, as Biller characterized it, a burning sensation on his "neck and Adam's apple." The ability of Biller to talk was not interfered with. When examined later by a doctor Biller was dismissed without any treatment or medication, and without any observable injury.[2] The appellant, so far as the record shows, did not hit Biller or otherwise molest him. Actually, Biller was some twenty years younger than appellant and as he admitted, he was "a pretty husky fellow," larger than the appellant. When this all happened, Biller looked out the window, saw a friend, and asked him to help him. The friend, a fellow-employee named Pruett, came in, touched the appellant and told him to stop. The appellant promptly complied. That was the extent of the incident.
 
 
 6
 At the suggestion of Pruett, Biller and the appellant went to their supervisor and reported the incident. The appellant gave as his explanation that he was emotionally upset, that he needed psychiatric treatment, and that Biller "kept pushing me and pushing me." Biller replied directly to the appellant, "Well, Ross, you have to make the payments."[3] At this point the appellant was taken to the West Virginia University Hospital, where, over the period of the next nine days, he was given a series of shock treatments. At the conclusion of these shock treatments, the appellant was certified by the attending physician as qualified to return to work. However, within two days after the incident and while the appellant was, to the knowledge of the supervisor, being given psychiatric treatment at the University Hospital, the appellant was advised by the Director of his unit that his discharge was being considered for "Conduct Prejudicial to the Best Interest of the Service and Disgraceful Conduct." This "Disgraceful Conduct" was that the appellant had "placed a rope around his (Biller's) neck and began choking him. This choking continued until another employee, Emerson Pruett, heard Mr. Biller's call for help from the second floor hall and intervened." The appellant was given ten days within which to answer the charge. The discharge proceedings followed the administrative ladder up to the Civil Service Commission's Appeals-Review Board, which sustained the appellant's discharge because of his difficulty with Biller. Following that decision, this action was begun in the District Court. From an unfavorable decree of the District Court, this appeal followed.
 
 
 7
 The decision in this case turns on the power of an agency to discharge and the circumstances under which such power may be exercised. Congress has expressly denied to an agency the right to discharge or suspend a civil service employee save for "such cause as will promote the efficiency of the service."[4] This is to say that "(s)imply having an identifiable cause (for discipline) is not sufficient to warrant adverse action" against a civil service employee; under the statute the adverse action must be " 'for such cause as will promote the efficiency of the service.' "[5] It follows that in every case of an adverse action against a governmental employee, the agency must, as an essential predicate for its action, make two affirmative determinations, I. e., it must determine (1) "that the employee misconduct has, in fact, occurred," and (2) "that the disciplinary action taken against the employee will 'promote the efficiency of the service.' "[6] Accordingly the mere fact that the employee has committed an immoral or disgraceful act even a criminal act will not justify a discharge unless it can be said that there is what the courts have described as a "vital nexus" between the act and the "efficiency of the service."
 
 
 8
 There is, of course, some conduct with respect to which the "nexus between the dismissed employee's activities and the efficiency of the service" is "obvious on the face of the facts."[7] Typical of conduct, which carries on its face prejudice to the service as contemplated in § 7501(a), are falsification of work records or expense accounts,[8] theft of government property,[9] assault on one's supervisor at work,[10] and insubordination.[11] All of these are without question related to the faithful and loyal performance of his duties by an employee and are work-related. They are quite different from misconduct which is entirely unrelated to the employee's work and which occurs when the employee is off duty. And the courts have recognized that distinction and have made plain the greater burden which rests on the agency to justify its action in the latter case. Thus, in Schlegel v. United States (1969) 416 F.2d 1372, 1377, 189 Ct.Cl. 30, Cert. denied 397 U.S. 1039, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970), the Court said:
 
 
 9
 "Misconduct (of a federal employee) while off duty does not, in itself, serve as a basis for removal. There must be a showing that the misconduct affected the employee's performance on the job * * *."
 
 
 10
 Another case has stated the "vital nexus" requirement in the off-duty or non-work-related case as raising the question "whether the asserted grounds for the adverse action, if found supported by evidence, would directly relate either to the employee's ability to perform approved tasks or to the agency's ability to fulfill its assigned mission."[12]
 
 
 11
 Nor does the agency satisfy its obligation under the statutory authority by merely parroting the language of the statute (I. e., that the discharge will "promote the efficiency of the service"). This was bluntly declared in White v. Bloomberg (D.Md.1972) 345 F.Supp. 133, 144, Aff'd.501 F.2d 1379 (1974):
 
 
 12
 "Without ignoring the safeguards against arbitrary dismissal from public employment which are embodied in that statute and in those regulations, an employer agency cannot justify a discharge merely by reciting in conclusory fashion the language of the statute. Instead, the agency 'must demonstrate some "rational basis" for its conclusion that a discharge "will promote the efficiency of the service." ' "
 
 
 13
 Except in the obvious case where the misconduct is on its very face prejudicial to the efficiency of the service a category of misconduct limited to acts directly related to the employee's performance of his duties the agency " 'must demonstrate some "rational basis" for its conclusion that a discharge "will promote the efficiency of the service".' "[13] The determination whether the misconduct of an employee is of such a serious nature as to implicate "the efficiency of the service," is ordinarily committed to the discretion of the Commission. While the discretion thus given the Commission is a broad one, it is not an unlimited one and may be reviewed judicially for abuse of discretion, arbitrariness or capriciousness both with respect to the substantive issue and, under recent authorities with respect to the penalty itself.[14] There is confusion in the decisions, however, on the standard of judicial review to be applied in determining whether the agency action was arbitrary.
 
 
 14
 A majority of the jurisdictions declare the standard for judicial review to be the substantial evidence rule.[15] Under this standard, the findings of the Commission must be based on " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[16] On the other hand, several jurisdictions have adopted the rule that the findings of the Commission are to be reviewed under a standard of "a rational basis" for the agency's findings, particularly as they relate to the "efficiency of the service."[17] By this standard, the action of the Commission in disciplining a Government employee will be found to be arbitrary unless the Commission "demonstrates some rational basis" for its findings. It would seem that this Circuit adopted the "substantial evidence" rule in Halsey v. Nitze[18] "arbitrary, unreasonable, capricious, or not supported by substantial evidence." Whether we shall continue to follow such standard in Government discharge cases or will opt, as one or two Circuits have, for the "rational basis" standard is, however, not important in this case, since, in our opinion, the discharge of the appellant cannot be sustained under either standard.
 
 
 15
 The decision of the Commission in this case proceeded on the false assumption that "(t)here is no requirement that the agency state specifically that the proposed action will promote the efficiency of the service or that it explain why it believes the action will promote the efficiency of the service." In adopting this view, the Commission was merely following the recommendation of its Director of Personnel Management, who, recognizing that at none of the intermediate steps in the proceedings had the "efficiency of the service" been addressed, had said that "(f)ailing to spell out how removal would promote the efficiency of the service is not necessarily a fatal error as determined in Begendorf v. United States, 340 F.2d 362, 169 Ct.Cl. 263 (1965)."[19] But, as we have seen, the Courts have made quite clear that, except for the rare case involving a work-related act while on duty, the agency must "spell out how removal would promote the efficiency of the service" and spell it out with such definiteness and specificity that the reviewing court may "be able to discern some reasonably foreseeable, specific connection between an employee's potentially embarrassing conduct and the efficiency of the service."[20] And, as we have said, this necessity arises particularly where the alleged misconduct occurs when the employee is off-duty. Accordingly, even where the employee had been convicted of the felony of possession of marijuana,[21] or of sexual misconduct,[22] or even of shooting another person,[23] the courts have found no "rational basis" for a discharge because the conduct occurred off-duty and the court could find no reasonable connection between the misconduct and the employee's work performance or the ability of the agency to perform its assigned mission.
 
 
 16
 Consonant with the view that there was no requirement on them to spell out how the appellant's conduct was detrimental to the efficiency of the service, the agency and the several administrative bodies to which the agency's decision was appealed did not endeavor to state some "identifiable" basis for finding a detriment to the "efficiency of the service" in the appellant's act. The nearest the record shows any attempt in this regard appears in the recommendation of the Director of Personnel Management, as made to the Appeals Review Board. In this recommendation, he said:
 
 
 17
 "The case of Ruffin v. United States, 144 Ct.Cl. 689 (1959) established the concept that removal for assaulting a fellow employee would promote the efficiency of the service."
 
 
 18
 However, neither the Appeals Review Board nor anyone of the other reviewing parties or agencies cite Ruffin as the basis for the action taken. Perhaps the reason was that this case is so entirely different from Ruffin. In Ruffin the discharged employee assaulted his superior on the job and in an incident arising in connection with the employee's work. It involved a case of gross insubordination committed on the job in the presence of all the other employees. That simply is not this case.
 
 
 19
 In the present case, Biller was not the appellant's superior. The alleged misconduct by the appellant did not consist of insubordination toward his superior in connection with the performance of his work nor had the appellant assaulted his superior on the job in the presence of all other employees. The incident, on account of which he was discharged, arose out of a strictly private difficulty between Biller and the appellant. It took place while both were off-duty for their lunch hour and at a place remote from the work place of both of them, I. e., at "an enclosed stairway separated from the rest of the building." That is in no way similar to an employee assaulting his superior on the job. Ruffin is inapposite.
 
 
 20
 The Commission, however, seems to have confused the facts of this case and inadvertently to have given to it a semblance of similarity to Ruffin. And this represents the only possible basis for finding in the decision of the Appeals Review Board any statement of a possible reason for a finding of prejudice to the service arising out of the act of the appellant. Thus, in summarizing its conclusion, the Appeals Review Board said:
 
 
 21
 "Although the attack was based principally on outside business problems it occurred on Federal property, at appellant's work site and was disruptive to efficient operations being conducted there."
 
 
 22
 This possible justification for its action, as stated by the Appeals Board, was as far removed from the actual facts in the case as the Director's analogy of its facts to those in Ruffin. The key finding by the Board seems to have been that the "attack" occurred "At appellant's work site," thereby disrupting "efficient operations being conducted There." (Italics added) As we have seen, however, this incident did not occur at the "appellant's work site" but at an "enclosed stairway separated from any work area." It thus could not have disrupted any agency operations "being conducted" at the site of the incident. Nor did the affair concern "principally outside business problems;" it related wholly and completely to "outside business problems." The only accurate statement in the Appeals Board's conclusion was that the incident occurred in a building leased by the Government, but it must be remembered, in an area remote from any work area and certainly not at "appellant's work site." It is impossible to see how an altercation between two public employees at an area remote from their work area or the work area of any other employees of the agency and while both employees were off-duty and over a matter completely unconnected with their work can be found to provide on its face a "rational basis" for a conclusion that such altercation was "disruptive to efficient operations being conducted there."
 
 
 23
 It follows that whether we assume that the Appeals Board did not make a determination on the question whether appellant's discharge would promote the efficiency of the service because, as it said, it thought this unnecessary, or that the sentence quoted Supra from its decision constituted its basis for a finding that the discharge did promote the efficiency of the service, the decision is fatally flawed. If the Appeals Board failed to make a specific "identifiable" finding on this point because it thought such a finding unnecessary, the Board erred as a matter of law: It is obligated to make such a finding with factual specificity. If, on the other hand, the language we have quoted is to be treated as conforming to the legal requirement of a factual justification of the discharge for the good of the service, it is defective as resting upon a completely incorrect factual basis. In either event, the administrative record does not satisfy the statutory requirement for a discharge of a public employee under § 7501(a).
 
 
 24
 Moreover, the appellant's offense has been considerably inflated in the course of the proceedings. It is said he committed a vicious assault on Biller. But there were no blows passed between the appellant and Biller; neither suffered the slightest injury. It is said that the appellant threw a rope about Biller's neck and began choking him. Biller suggested, at another point in his testimony, that it was much like a piece of binder's twine and the appellant indicated in his testimony it might have been a small rope such as would be used by draftsmen in making measurements on plans or drawings such as he had been working on that morning. If the appellant applied any pressure, it was minimal, since it is admitted that there was no evidence of any such pressure having been applied on Biller's neck. Biller did go to a doctor but the doctor, after examining Biller, did not give him any medication and dismissed him as in need of no medical attention of any kind. Biller was not injured in any way and was not in any real danger of being garotted, as the agency report would intimate.
 
 
 25
 There was every reason to have dismissed the whole proceedings both upon the ground that the incident was too trivial and petty for the drastic penalty of termination of employment and upon the ground that there was no "rational basis" for a finding that the discharge would promote the efficiency of the service. And this is particularly so in the light of appellant's psychiatric disability at the time. The administrative record suggests that this point was disregarded because it was assumed that the need for psychiatric treatment by the appellant was not real but feigned. This is indicated by the comment in the record and in the argument in this Court that the appellant was never confined at the University Hospital and was free to go at will. Whether the appellant was confined or not, he was subjected to a series of shock treatments over a period of approximately ten days at the Hospital under the direction of the University psychiatrists. It cannot be assumed that these physicians would have put the appellant through such a regimen of hazardous shock treatments if they had not thought that his condition required it. Under the practice established by the Civil Service Commission, this condition of the appellant should have been taken into consideration by the agency.[24] Ordinarily we would be inclined to remand to the District Court, for further remand to the Commission to give consideration to the psychiatric condition of the appellant. This, however, is unnecessary in this case because we are convinced that the action of the ARB was arbitrary and capricious in that the record does not provide any sufficient "rational basis" for the findings commanded by § 7501(a) as a basis for the discharge of a public employee.
 
 
 26
 Accordingly the judgment of the District Court is reversed and the cause is remanded to the District Court for the entry of appropriate judgment in favor of the appellant.
 
 
 27
 REVERSED.
 
 K. K. HALL, Circuit Judge, dissenting:
 
 28
 I must respectfully dissent. I am sympathetic to the plight of Mr. Phillips, who had a long and unblemished work record and was certainly under considerable mental stress. But the fact remains that he assaulted a fellow employee on work premises and during working hours.
 
 
 29
 The attack on Biller was an assault whether perpetrated with a piece of twine or a hangman's noose. The attack took place on business premises whether "at an enclosed stairway" or in a working area. The attack took place during working hours whether at lunchtime or otherwise. The fact that the attack arose from a private dispute is irrelevant.
 
 
 30
 Notwithstanding the majority's heroic effort to distinguish away Ruffin v. United States, 144 Ct.Cl. 689 (1959), I am of the opinion that the case is controlling here. The sanction of dismissal imposed on Mr. Phillips by the Civil Service Commission Appeals Review Board was a hard one, but it was well within the discretion of the Board.
 
 
 31
 I would affirm the order of the district court.
 
 
 
 [1]
 The propriety of Biller's action in pressing the appellant for payment of the corporation's debt to him while both men were supposed to be working, would seem open to some question. While both he and the appellant were at work was not the proper occasion for Biller to be seeking to collect from a fellow-employee a personal debt, or to have been interrupting him at his work for that purpose. Certainly, he could hardly have expected that the appellant could have raised the necessary funds to pay the debt by the noon-break of the two. If Biller had been a bill-collector rather than a fellow-employee, his action in "hounding" the appellant at his work over the back rent would likely have violated the provisions of the Fair Debt Collection Practices Act § 1692c(a) (3), 15 U.S.C. However, it would be no less objectionable in principle, if not under the Act, because Biller was acting for himself and not as a bill-collector, as defined in the Act
 
 
 [2]
 Biller, in his testimony, seeks to discount his curt dismissal by the physician with the statement that the doctor wanted to retire. It is significant, though, that he never saw another physician nor does he even now claim that he suffered anything more than the burning sensation which twine will ordinarily cause
 
 
 [3]
 The debt for the rent was the debt of the corporation. It was obvious, though, that Biller was pressing the appellant to pay the debt personally
 
 
 [4]
 § 7501(a), 5 U.S.C
 
 
 [5]
 See Young v. Hampton (7th Cir. 1977) 568 F.2d 1253, 1259
 
 
 [6]
 Young v. Hampton, supra, at 1257 (568 F.2d)
 Of these the more important the one which expresses that statutory limitation on an agency's right of action is the requirement of a finding that the discharge will "promote the efficiency of the service."
 
 
 [7]
 Young v. Hampton, supra, at 1260-1261 (568 F.2d)
 
 
 [8]
 Jones v. Priebe (6th Cir. 1973) 489 F.2d 709-710
 
 
 [9]
 Alsbury v. United States Postal Serv. (9th Cir. 1976) 530 F.2d 852, 855, Cert. denied 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91
 
 
 [10]
 Christie v. United States (Ct.Cl.1975) 518 F.2d 584, 586; Ruffin v. United States (1959) 144 Ct.Cl. 689
 
 
 [11]
 Brancadora v. Federal Nat. Mortg. Ass'n. (9th Cir. 1965) 344 F.2d 933, 934; Kessler v. General Services Administration (S.D.N.Y.1966) 252 F.Supp. 629, 630
 
 
 [12]
 Doe v. Hampton (1977) 184 U.S.App.D.C. 373, 566 F.2d 265, 272, n.20
 
 
 [13]
 White v. Bloomberg, supra, at 144 (345 F.Supp.)
 
 
 [14]
 See Boyce v. United States (Ct.Cl.1976) 543 F.2d 1290, 1292-1294
 
 
 [15]
 Alsbury v. United States Postal Serv., supra, at 854 (530 F.2d); Terry v. United States (1974) 499 F.2d 695, 704, 204 Ct.Cl. 543, Cert. denied 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975); Jones v. Priebe, supra at 710 (489 F.2d); Polcover v. Secretary of Treasury (1973) 155 U.S.App.D.C. 338, 477 F.2d 1223, 1231, Cert. denied 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237; Charlton v. United States (3d Cir. 1969) 412 F.2d 390, 395; Gray v. Macy (9th Cir. 1966) 358 F.2d 742, 743; Porter v. Mathews (N.D.Ala.1976) 428 F.Supp. 711, 715
 
 
 [16]
 Labor Board v. Columbian Co. (1939) 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660, quoting Consolidated Edison Co. v. National Labor Relations Board (1938) 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126
 
 
 [17]
 Hurley v. United States (10th Cir. 1978) 575 F.2d 792, 794; Young v. Hampton (7th Cir. 1977) 568 F.2d 1253, 1257; Wroblaski v. Hampton (7th Cir. 1976) 528 F.2d 852, 853; Wood v. United States Post Office Department (7th Cir. 1973) 472 F.2d 96, 99, Cert. denied 412 U.S. 939, 93 S.Ct. 2775, 37 L.Ed.2d 399; Norton v. Macy (1969) 135 U.S.App.D.C. 214, 417 F.2d 1161, 1165
 
 
 [18]
 390 F.2d 142, 144 (1968), Cert. denied 392 U.S. 939, 88 S.Ct. 2316, 20 L.Ed.2d 1399
 
 
 [19]
 Begendorf does not support the Director's statement. In that case "(t) he only issue raised" was the claim of a procedural defect in the failure of the Government to produce certain witnesses requested by the disciplined employee. It is true some of those witnesses were expected to testify whether the discharge would "promote the efficiency of the service." But the point in issue was not whether such issue was relevant but whether the Government was required to produce witnesses for the discharged employee on that issue
 
 
 [20]
 Norton v. Macy, supra, at 1167 (417 F.2d)
 
 
 [21]
 Young v. Hampton, supra (568 F.2d 1253)
 
 
 [22]
 Norton v. Macy, supra (417 F.2d 1161); Scott v. Macy (1968) 131 U.S.App.D.C. 93, 402 F.2d 644, 649
 
 
 [23]
 Fugate v. LeBaube (N.D.Tex.1974) 372 F.Supp. 1208, 1214
 
 
 [24]
 See Doe v. Hampton, supra, at 279 (566 F.2d)