This civilian pay case is before the court on cross-motions for summary judgment.[1] Plaintiff requests review of a decision of the Merit Systems Protection Board (MSPB) sustaining his removal from the GS-12 position of criminal investigator with the Drug Enforcement Administration (DEA). The stated ground for the removal was unsatisfacto *798 ry performance. Plaintiff challenges his removal primarily on two grounds. First, he alleges that the MSPB failed to demonstrate a nexus between the specifications of unsatisfactory performance and the efficiency of the service. Second, he asserts that the DEA’s real reason for removing him was his "whistleblowing” 3 years earlier. Plaintiff imputes, in other words, a bad faith motive of reprisal to the DEA.
We have carefully examined plaintiffs challenges to the MSPB decision. For the reasons stated below, we find the challenges to be without merit. Further we conclude that the MSPB decision is neither arbitrary nor capricious, and is supported by substantial evidence. Accordingly, having heard oral argument, we grant defendant’s motion for summary judgment.
The factual setting of the case is as follows. On February 6, 1978, plaintiff, a GS-12 criminal investigator, was reassigned by the DEA from its office in El Paso, Texas, to its office in Lubbock, Texas.[2] As required by standard operating procedure, an evaluation of plaintiffs work performance in El Paso was completed by his group supervisor. The evaluation rated plaintiff as "marginal,” i.e., his performance had been "barely satisfactory.”
On May 6, 1978, plaintiff was issued a letter of warning from the Lubbock DEA office. The letter advised him that his job performance in Lubbock was unsatisfactory and that continued unsatisfactory performance might result in re *799 moval. Subsequent to the issuance of the letter, plaintiffs supervisor in Lubbock, Mr. Voyles, held several counseling sessions with plaintiff concerning his job performance. According to Voyles, plaintiffs performance continued to be unsatisfactory throughout the period of these sessions.
On July 20, 1978, plaintiff was notified of a proposed adverse action to remove him from employment with the DEA.[3] The notification letter stated that unsatisfactory performance was the reason for the proposed removal. Five specifications of unsatisfactory performance were set forth in the letter. The specifications related solely to plaintiffs job performance in the Lubbock office. The specifications were styled in the letter as: (1) failure to initiate and bring to a conclusion criminal cases; (2) failure to recruit, develop, and direct informants; (3) failure to provide state and local law enforcement officers with leadership and investigative expertise; (4) failure to develop and maintain a working relationship with the United States Attorneys; and (5) failure to prepare investigative reports in sufficient detail and with a high degree of accuracy.
On August 4, 1978, plaintiff replied in writing to the specifications. On August 23, 1978, he was advised by the DEA regional director that an adverse determination had been reached in his case. Pursuant to the adverse determination, plaintiff was removed from employment on September 1,1978.
Plaintiff appealed his removal to the MSPB. On March 20 and 21, 1979, the MSPB held a hearing on the appeal. At that time, several witnesses, including plaintiff, testified. On May 31, 1979, the MSPB rendered its decision. In the decision, it sustained specifications 1, 2, 3, and 5.[4] It concluded that these specifications were supportive of the charge of unsatisfactory performance, i.e., the MSPB found that plaintiffs performance was unsatisfactory. It determined further that (a) "the penalty of removal for the sustained reason of unsatisfactory performance is not unreasonable, arbitrary, or capricious” and (b) plaintiffs *800 removal "was accomplished for such cause as will promote the efficiency of the service.”
In the course of sustaining the removal, the MSPB rejected plaintiffs contention that the DEA removed him in reprisal for certain testimony which he gave in 1975 to the United States Attorney for the Western District of Texas. The testimony concerned alleged wrongdoing, including theft and other law violations, by personnel in the DEA El Paso office. In discussing the evidence adduced by plaintiff to support his contention that this testimony, or "whistle-blowing,” was the real reason for his removal, the MSPB noted:
The testimony of Mr. Jamie C. Boyd, U.S. Attorney for the Western District of Texas, corroborates appellant’s testimony that appellant did testify during 1975, with others, concerning irregularities by * * * personnel [in the DEA El Paso office]. * * * However; Mr. Boyd testified * * * that he has no personal knowledge of appellant’s work performance at Lubbock, Texas. * * * [Emphasis supplied.]
The MSPB reasoned that, with respect to plaintiffs contention of reprisal, "the question to be resolved is whether appellant’s removal for unsatisfactory performance was a pretext.” The MSPB concluded: "Our total review of the evidence, * * * leads us to believe that appellant’s work performance at Lubbock, Texas, was unsatisfactory. Thus, the agency’s reason for adverse action is valid and not pretextural.”
On June 11, 1980, plaintiff commenced this action for review of the MSPB decision. In his petition, he requests the court to overturn the decision and to grant the following relief: reinstatement, back pay, attorney’s fees, and costs.[5] It is long settled that "in considering these adverse personnel actions our review is limited to ascertaining that the final administrative appellate decision was in conformance with the Constitution, statutes, and regulations, was not arbitrary or capricious or taken in bad faith, and was supported by substantial evidence.” Giles v. United States, 213 Ct. Cl. 602, 605, 553 F.2d 647, 649 (1977). Good *801 faith of those taking administrative action is presumed. Wathen v. United States, 208 Ct. Cl. 342, 527 F.2d 1191 (1975), cert. denied, 429 U.S. 821 (1976).
In his cross-motion for summary judgment, plaintiff admits the factual accuracy of specifications 1 through 3. That is, he admits that during his tenure in the DEA Lubbock office, he did not initiate and bring to a conclusion a single criminal case, he did not develop a single informant, and he did not provide state and local law enforcement officers with leadership.[6] Furthermore, at oral argument, plaintiffs counsel conceded that of the two sustained subspecifications of specification 5, one is supported by-substantial evidence.[7] Thus, plaintiffs sole challenge to the factual correctness of specifications 1, 2, 3, and 5, is directed to the other sustained subspecification of specification 5.
The subspecification in question concerned plaintiffs performance of an assignment calling for a fugitive investigation. The MSPB accurately described the assignment and plaintiffs performance with respect to it, as follows:
* * * [T]he record contains a copy of a fugitive referral dated February 8, 1978, to the Lubbock office from the Phoenix office designated "Request for Post Office Box Information.” In essence, the Phoenix office advised the Lubbock office that it had reason to believe that Federal fugitive Frank Coscetti, alias Michael Burgess, might be in Snyder, Texas, and might be renting P.O. Box 1169 in that city. The Phoenix request was that investigation be conducted in Snyder to determine whether the fugitive was in Snyder. The agency states that this investigation was assigned to appellant [plaintiff] in March 1978. * * * * * * * *
Appellant testified * * * that after he was assigned the fugitive investigation, he telephoned "an acquaintance” employed in the Snyder Post Office who told him that no *802 one named Coscetti, Free, or Burgess rented P.O. Box 1169. Appellant then completed his investigative report. Appellant testified * * * "I don’t know what else I could have done.” * * *
Plaintiff contends that he was unable to successfully complete the investigation — i.e., to determine whether a Michael Burgess was located in Snyder, Texas, and whether such a person was the fugitive — because he lacked the "tracking” information necessary to conduct the investigation. But, as the MSPB makes clear, the record belies this contention:
* * * The file contains appellant’s very brief report of investigation dated June 15, 1978, reporting that, "A check was made of P.O. Box 1169 in Snyder, Texas with negative results. ... A check at the post office in Snyder, Texas revealed no names 'Coscetti’, 'Free’ or 'Burgess’. ”
Subsequently, the fugitive case was again assigned, this time to two other agents in the Lubbock office, and a comprehensive report was prepared by one of these officers reporting the location and interview of one Michael Burgess. The investigative report contained information that Mr. Burgess was listed in the Snyder Telephone Directory, was employed by Monsanto Chemical Company (which rents P.O. Box 1169 in Snyder), and also contained information that Burgess had previously been interviewed by the FBI approximately May 1978 concerning possible fugitive status. The record also shows that the Michael Burgess in Snyder, Texas, was not the fugitive sought. [Emphasis supplied.]
In the subspecification in question, the DEA charged plaintiff with "insufficient effort” to locate Michael Burgess; it also noted that plaintiffs "failure to perform” resulted in "additional manpower being expended.” The MSPB sustained the subspecification, stating:
* * * Given only a name, to locate a body fitting it, in a city the size of Snyder, Texas, we believe an investigator with much less experience than appellant could have utilized investigative techniques which would have resulted in successful resolution of the investigative matter before the agency. Certainly, as a minimum, appellant could have gone to Snyder, Texas, and looked in the telephone directory. We do not believe appellant’s investigative efforts in this fugitive case even approached satisfactory effort. Further, the brief investigative report *803 prepared by appellant is not satisfactory in that it does not reflect how appellant obtained the data for his negative report.
In summary concerning the fugitive case, we find that appellant’s efforts fall far short of being sufficient, and that his report in the matter was also deficient. * * * [Emphasis supplied.]
We concur fully in this statement by the MSPB. The subspecification is, in short, supported by substantial evidence.
Having determined that specifications 1, 2, 3, and 5 are supported by substantial evidence, we turn to the question whether there is a nexus between the actions or omissions described in the specifications and the efficiency of the service.[8] Plaintiff argues that the MSPB has failed to demonstrate such a nexus, i.e., that the MSPB has not shown how his conduct adversely affected the efficiency of the DEA. According to plaintiff, (a) the MSPB "automatically assumed that dismissing [him] would promote the efficiency of the service” and (b) under Phillips v. Bergland, 586 F.2d 1007 (4th Cir. 1978), this assumption is legal error.
We disagree with premise (a); moreover, assuming ar-guendo premise (a) is correct, plaintiffs reliance on Phillips in premise (b) is ill founded. We start with premise (a). Contrary to plaintiffs assertion, the MSPB did concretize the connection between his conduct and the efficiency of the DEA. For example, with regard to plaintiffs failure to prepare status reports on the 10 cases assigned to him for such purpose, the MSPB noted that "[subsequently, the appellant’s status report assignment was completed by other officers.” With regard to plaintiffs superficial and abortive effort to locate Michael Burgess, the MSPB noted: "Subsequently, the fugitive case was again assigned, this time to two other agents in the Lubbock office, and a comprehensive report was prepared by one of these officers reporting the location and interview of one Michael Burgess.” Thus, the MSPB did provide specific illustrations of how plaintiffs conduct adversely impacted on DEA efficiency. The MSPB demonstrated, in short, that one consequence *804 of the conduct was that the DEA was compelled to have other personnel do the work assigned to plaintiff.
Furthermore, plaintiffs reliance on Phillips is misplaced. There the conduct which was asserted to constitute ground for removal was unrelated to the employee’s job responsibilities. In addition, the conduct occurred (i) at a place remote from the employee’s worksite and (ii) when he was off duty. The Phillips court held that, with respect to conduct of this nature, the removing agency and the administrative appeals body must affirmatively demonstrate, or spell out, how the conduct is detrimental to the efficiency of the service. The court expressly noted an exception to this showing-of-nexus requirement:
There is, of course, some conduct with respect to which the "nexus between the dismissed employee’s activities and the efficiency of the service” is "obvious on the face of the facts.” Typical of conduct, which carries on its face prejudice to the service as contemplated in § 7501(a), are falsification of work records or expense accounts, theft of government property, assault on one’s supervisor at work, and insubordination. All of these are without question related to the faithful and loyal performance of his duties by an employee and are work-related. * * * [Footnotes omitted.]
Phillips v. Bergland, supra, 586 F.2d at 1011 (quoting Young v. Hampton, 568 F.2d 1253, 1260-61 (7th Cir. 1977)). Thus, even under the holding in Phillips, it is entirely proper for a removing agency and administrative appeals body to presume that there is a nexus between (a) the efficiency of the service and (b) conduct which is directly related to the employee’s performance of his job duties. Such conduct "speaks for itself,” meaning that it is in general unnecessary for the removing agency to demonstrate the connection between the conduct and the efficiency of the service. The very nature of the conduct makes the connection obvious and gives rise to a legally cognizable presumption of connection.
The instant plaintiffs conduct gives rise to such a presumption, i.e., the conduct carries on its face prejudice to the service. Specifications 1, 2, 3, and 5 all directly relate to plaintiffs failure to perform the duties of his position. *805 These duties were expressly set forth in the official agency description of the position. The duties included the development and recruitment of informants, the making of criminal cases, the provision of leadership and expertise to local law enforcement personnel, and the preparation of adequately detailed investigative reports. Plaintiff essentially admits that he failed to accomplish any of these tasks. To be sure, with respect to specifications 1 through 3, he proffers certain excuses: e.g., time spent in Lubbock was insufficient to develop informants; out-of-town assignments precluded full discharge of duties in Lubbock; local law enforcement personnel were not in need of guidance by federal agents. A careful examination of the record convinces us, however, that these factors did not cause plaintiffs failure to perform. Rather, the failure was attributable to the fact that he did not want to perform. Not only did he not accomplish the tasks required of his position, he made little or no effort at accomplishment. In short, he did not even attempt to do his job.[9]
Accordingly, we conclude that plaintiffs job performance was in fact unsatisfactory. The MSPB finding that his removal promoted the efficiency of the service is supported by substantial evidence.[10] It is obvious that replacing plaintiff with a person willing and able to do the job enhanced DEA’s ability to fulfill its mission.
Plaintiffs final argument is that the DEA removed him in bad faith. Before the MSPB, he imputed a single bad faith motive to the DEA, namely, that the agency removed him in reprisal for his whistleblowing in 1975. Before this court, in addition to asserting the just stated motive, plaintiff suggests that the agency removed him in reprisal for his arrest of a prominent citizen on a heroin-smuggling charge. To support his bad faith argument, plaintiff relies not only on the administrative record, but also on six *806 affidavits which he has submitted to the court. The affidavits, in addition to buttressing his contention of agency reprisal for whistleblowing, raise for the first time the other alleged bad faith motive.
Plaintiff has failed to show why he did not adduce the six affidavits in the administrative proceedings. He concedes that the affidavits do not involve newly discovered evidence or evidence extant, but unavailable, at the time of those proceedings. Because neither the DEA nor the MSPB had the affidavits before it, consideration of the affidavits at this stage would be inappropriate. In short, because plaintiff failed to exhaust his administrative remedies insofar as the affidavits are concerned, we decline to consider the affidavits. Brousseau v. United States, 226 Ct. Cl. 199, 640 F.2d 1235 (1981). For similar reasons, we decline to consider the alleged agency bad faith stemming from plaintiffs arrest of a prominent citizen. Our evaluation of his bad faith argument is thus confined to the contention that the DEA removed him in reprisal for whistleblowing.
As indicated earlier, the MSPB rejected this contention. It found that "the agency’s [stated] reason for adverse action [namely, unsatisfactory performance] is valid and not pretextural.” The record supports this finding. Plaintiff gave his whistleblowing testimony in 1975. The testimony dealt solely with personnel and activities in the DEA El Paso office. Plaintiffs removal from employment did not occur until 3 years later. The stated ground for the removal, unsatisfactory performance, related solely to his activities in the DEA Lubbock office.. The record contains no evidence that plaintiffs superiors in the Lubbock office acted in bad faith toward him, i.e., there is no evidence that they treated or evaluated him unfairly or that they harbored animus against him.[11]
Similarly, there is no record evidence of bad faith on the part of plaintiffs superiors in the Dallas regional headquarters of DEA. There is nothing to indicate that the deputy regional director who issued the proposal to remove plaintiff was actuated by anything other than a dispassionate, *807 objective appraisal of plaintiffs job performance. The same observation is equally apropos with respect to the regional director who made the decision to remove plaintiff. In sum, the record contains no evidence that plaintiffs removal, based on unsatisfactory performance, was in bad faith.[12] The presumption that Government officials act in good faith stands unrebutted. See Preble v. United States, 150 Ct. Cl. 39 (1960) (removal based on inefficiency upheld where there was substantial evidence of inefficiency and where employee failed to make a prima facie showing that retaliation was a reason for his removal).
On the basis of the foregoing discussion, we conclude that the decision of the MSPB is neither arbitrary nor capricious and is supported by substantial evidence. We affirm the decision in all respects.
it is therefore ordered that plaintiffs motion to allow out-of-time filing of affidavits is denied.
it is further ordered that defendant’s motion for summary judgment is granted, plaintiffs cross-motion is denied, and the petition is dismissed.

 Plaintiff requests in the alternative that the court conduct a trial on the issue whether his removal was in bad faith. He was accorded full opportunity to and in fact did litigate this issue at the administrative level. There being no showing that (a) newly discovered evidence pertaining to the issue exists or (b) pertinent evidence was extant but unavailable at the time of the administrative proceedings, we deny plaintiff’s request for a trial de novo. Cohen v. United States, 212 Ct. Cl. 568 (1977); Shanteau v. United States, 208 Ct. Cl. 983 (1975). Parenthetically, since the administrative proceedings in the case were pending on January 11,1979, the case is not governed by the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111, 5 U.S.C. §§ 552 et seq. (Supp. III 1979). See Gaskins v. United States, 221 Ct.Cl. 915 (1979).

 Plaintiffs job description stated that his major duties were as follows:
"Individually, or as a team leader over one or more subordinate investigators, determines the most effective manner for developing and carrying out an investigation. Recruits, develops and directs informants. Operates undercover, pursuing role playing necessary to obtain drug and non-drug evidence and related intelligence data. Conducts surveillance operations and actively participates in Title III operations. During all investigational phases, keeps appropriate supervisory personnel informed on problem areas and progress. Decides when to enlist the assistance of state and local law enforcement officers and coordinates investigational efforts with them. Prepares investigative reports with responsibility for presenting necessary aspects of the investigation in sufficient detail with proper emphasis and highest degree of accuracy to aid in supporting possible prosecution. Makes progress reports on intelligence gathered during the course of investigations. Actively participates in raids, seizures, and arrests. Interviews and interrogates arrested suspects and directs or personally takes fingerprints and photographs. Develops and maintains productive working relationships with state and local agencies, promotes information exchanges and provides investigative expertise. Consults with U. S. Attorneys where problem areas exist in evidence development and in preparation for witness or investigator court appearances.”

 The proposal to remove plaintiff was issued by the acting deputy regional director of DEA.

 The MSPB found that the evidence of record did not support specification 4.

 Under no circumstances would attorney’s fees be allowable in this case. Nibali v. United States, 225 Ct Cl. 8, 634 F.2d 494 (1980). As for costs, this court has, as a matter of practice, not given costs to either side. Rasmussen v. United States, 211 Ct. C. 260, 543 F.2d 134 (1976).

 The DEA operation in Lubbock was a task force operation involving assignment of four local police officers to work with the federal agents.

 Specification 5, which, it is recalled, was styled "[fjailure to prepare investigative reports in sufficient detail and with a high degree of accuracy,” was comprised of three subspecifications. The MSPB sustained two of the three subspecifications and found that the sustained subspecifications fully supported the specification. At oral argument here, plaintiffs counsel conceded that-the sustained subspecification involving plaintiff’s failure to prepare status reports on 10 cases assigned to him for such purpose, was supported by substantial evidence. The substantial evidence consisted of the testimony of James Collier, a DEA agent serving in the Lubbock office during plaintiffs tenure there.

 Section 7501(a) of 5 U.S.C. (1976) provided: "An individual in the competitive service may be removed * * * without pay only for such cause as will promote the efficiency of the service.”

 There is ample evidence of this in the record. James Collier, a senior agent in the DEA Lubbock office, testified that plaintiff did not adequately familiarize himself with the cases in the Lubbock office and that he did not pursue important points for investigation. Keith Fieger, acting deputy regional director for DEA, testified that plaintiff had essentially refused to utilize the informant technique which was basic to the work of the Lubbock task force.

 Plaintiff argues that removal was too harsh a penalty for his unsatisfactory performance. We disagree. Under the circumstances of this case, the sanction of removal was well within the zone of permissible agency discretion.

 Indeed, the contrary is reflected in the record. Mr. Voyles, plaintiffs supervisor in Lubbock, counseled plaintiff on several occasions in an attempt to help him improve his job performance.

 It is true that the record contains evidence that, subsequent to plaintiffs whistleblowing but prior to his transfer to the Lubbock office, his colleagues in the El Paso office subjected him to harassment. The fact of such harassment did not confer upon plaintiff a privilege to be derelict in his duties once he was transferred to Lubbock, i.e., once he was insulated from the harassment.