Iris PENNA, Plaintiff,

v.

The UNITED STATES ARMY, CORPS OF ENGINEERS, NEW YORK DISTRICT; the United States Civil Service Commission; Maurice Lustig; and Sylvester Salzano, Defendants.

No. 79 Civ. 4923.

United States District Court,
S. D. New York.

June 3, 1980.

James Andres, New York City, for plaintiff.

William M. Tendy, U. S. Atty. for the Southern District of New York, New York City, for defendants; Edward G. Williams, Asst. U. S. Atty., New York City, of counsel.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, formerly a non-probationary career employee in the United States Civil Service, was discharged in June 1977 from her position as a clerk-typist assigned to the Acquisition Branch of the Realty Section, United States Corps of Engineers, Department of the Army (the "Army"). She commenced this action for judicial review of the agency's decision to discharge her, seeking reinstatement and back pay. The defendants moved for summary judgment pursuant to Fed.R.Civ.P. 56 dismissing the complaint, based upon the administrative record. Upon a thorough review of that record, the Court concludes that the agency action must be sustained and the motion granted.

Plaintiff was first employed by the Army in 1974. She was assigned to her last position—with the Acquisition Branch—in November 1975. In April 1977, plaintiff was notified by Sylvester Salzano, the Branch Chief, that he proposed to terminate her employment upon thirty days' notice.[1] The assigned reason was "inefficiency in the performance of [plaintiff's] official duties." Salzano's specifications of unsatisfactory performance were three—accuracy in typing, rate of production, and attitude. The notice listed fifteen specific examples of deficient typing, hostile or insolent attitude, and of complaints received from plaintiff's supervisors. Plaintiff submitted a written reply on May 24, 1977, in essence denying each charge, and countercharging that she had been "harrassed, insulted and slandered" on numerous occasions while employed in the Acquisition Branch.

On June 5, 1977, plaintiff was informed by Maurice Lustig, Chief of the Real Estate Division, of his determination, upon a review of the pertinent documents, that her discharge was warranted and that she would be separated as of June 17, 1977. Plaintiff thereupon appealed to the Federal Employee Appeals Authority of the Civil Service Commission (the "FEAA") on June 9, 1977.[2] A hearing was conducted by the FEAA on August 25, 1977 at which both plaintiff and the Army presented and were permitted to cross-examine witnesses.

Plaintiff was represented by Robert D. Jensen, a National Representative of the American Federation of Government Employees.

The FEAA filed its opinion in November 1977. It found first that a majority of the specific items listed by the Army in the notices sent to plaintiff lacked the specificity and detail required to enable her to adequately refute them and, accordingly, it did not consider those charges against her. The FEAA also found, however, that seven remaining specifications were sufficiently detailed. Six of these items were instances of poor typing, the other involved an occasion when plaintiff, after an argument with a supervisor, left the office without permission. The FEAA further found that the Army had complied with all applicable procedures in effectuating plaintiff's discharge and that the record as a whole supported the charges relating to poor typing and low productivity.[3] The FEAA concluded that the Army's decision was neither arbitrary nor capricious and that it was taken for good cause such as to promote the efficiency of the service;[4] it therefore sustained plaintiff's discharge.

 The scope of judicial review of a federal agency's decision to terminate an employee is narrowly confined. Review is based solely upon the administrative record.[5] The function of the reviewing court

---

1. 5 C.F.R. § 752.202(a) (1978).

2. *Id.* § 752.203 (1978).

3. The FEAA did not sustain the charge of deficiency related to attitude and it is not considered here.

4. 5 C.F.R. § 752.104(a) (1978). *Cf.* 5 U.S.C. § 7513(a) (1980).

5. *See, e. g., Doe v. Hampton,* 566 F.2d 265, 272 (D.C. Cir. 1977); *Higa v. McLucas,* 549 F.2d 152 (9th Cir.), *cert. denied,* 433 U.S. 909, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977); *Polcover v. Secretary of Treasury,* 477 F.2d 1223, 1225–26 (D.C. Cir.), *cert. denied,* 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973); *Henkle v. Campbell,* 462 F.Supp. 1286 (D.Kan.1978); *McKenzie v. Calloway,* 456 F.Supp. 590, 593–94 (E.D. Mich.1978); *Hadigan v. Board of Governors,* 463 F.Supp. 437, 439 (D.D.C.1978), *aff'd without opinion,* 612 F.2d 586 (D.C. Cir. 1980);

*Ford v. United States Dep't Housing,* 450 F.Supp. 559, 562 (N.D.Ill.1978). *Cf. Porter v. Califano,* 592 F.2d 770 (5th Cir. 1979) (*de novo* review may be proper where agency fact-finding procedure is inadequate).

Plaintiff contends that the Court is not limited in its review to the administrative record and has submitted two affidavits not contained in the record in support of her position on the merits of this motion. Her contention is without merit; the authorities she cites in support of it are utterly inapposite and as indicated above, a wealth of contrary authority exists. The Court has not considered, in deciding the present motion, the two affidavits which abound in a multitude of hearsay allegations and charges.

is not to pass upon the wisdom or good judgment of the agency's decision but only to determine whether (1) the agency complied with applicable procedures in effectuating the dismissal, and (2) whether its action was arbitrary or capricious.[6] However, since a federal employee may be discharged only "for such cause as will promote the efficiency of the service," [7] for an agency's decision not to be arbitrary and capricious, the reasons for the discharge must be rationally related to the efficiency of the service.[8]

◼ Plaintiff does not claim that there were any procedural deficiencies in the administrative proceedings surrounding her discharge; nor does she contend that the reasons given for her discharge—poor typing ability and poor productivity—lack a rational connection to the efficiency of the service. She does argue, however, that the agency action terminating her was arbitrary and capricious. She first claims that the seven specific instances of deficient performance considered by the FEAA were insufficient to sustain the Army's action. This is so, she contends, because those specific instances of error represent but a small percentage of the letters she typed for the Acquisition Branch.

This contention is without merit. The specific letters relied on by the Army to substantiate its decision to terminate plaintiff did not purport to be an exhaustive compilation of plaintiff's typing errors but were merely exemplars of plaintiff's deficient performance. Moreover, even if these errors were the only mistakes made by the plaintiff, the Court could not hold that they did not justify the Army's decision to terminate her. To do so would require the Court to do precisely what a reviewing court must refrain from doing in such cases—to impose upon the agency the Court's judgment as to what level of accuracy should be required of a typist; in other words, to pass upon the wisdom of the Army's decision.

In any event, the implication in plaintiff's argument that the specific instances referred to in the Army's letter constitute the only evidence in the record of plaintiff's typing problems is incorrect. At the hearing before the FEAA, three of plaintiff's immediate supervisors—realty specialists in the Acquisition Branch for whom plaintiff did typing—as well as Salzano, the Branch Chief, each testified to the general inadequacy and error-ridden quality of plaintiff's typing. Plaintiff's own witness—her former supervisor, Beuhla Kaplan—testified that plaintiff's typing was "very, very bad."

6. See, e. g., United States v. Professional Air Traf. Con. Org., 438 F.2d 79, 80–81 (2d Cir. 1970), cert. denied, 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 661 (1971); McTiernan v. Gronouski, 337 F.2d 31, 34 (2d Cir. 1964); Gilbert v. Johnson, 601 F.2d 761 (5th Cir. 1979); Hurley v. United States, 575 F.2d 792, 793–94 (10th Cir. 1978); Doe v. Hampton, 566 F.2d 265, 271 (D.C. Cir. 1977); Higa v. McLucas, 549 F.2d 152, 153 (9th Cir.), cert. denied, 433 U.S. 909, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977); Sexton v. Kennedy, 523 F.2d 1311, 1314 (6th Cir. 1975), cert. denied, 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796 (1976); Wroblaski v. Hampton, 528 F.2d 852 (7th Cir. 1976); Grebosz v. United States Civil Service Comm'n, 472 F.Supp. 1081, 1084 (S.D.N.Y.1979); Hardin v. Carlson, 77 Civ. 976 (LBS) (S.D.N.Y. August 9, 1978); Lee v. Bolger, 454 F.Supp. 226 (S.D.N.Y.1978); Hadigan v. Board of Governors, 463 F.Supp. 437, 439–40 (D.D.C.1978), aff'd without opinion, 612 F.2d 586 (D.C. Cir. 1980); Henkle v. Campbell, 462 F.Supp. 1286, 1288 (D.Kan.1978); Courts v. Economic Opport. Auth., 451 F.Supp. 587, 591–92 (S.D.Ga.1978).

Some courts reviewing adverse personnel actions have purported to apply a so-called "substantial evidence" test—either in addition to or by way of applying the arbitrary and capricious standard. See, e. g., Phillips v. Bergland, 586 F.2d 1007, 1012 (4th Cir. 1978); Alsbury v. United States Postal Serv., 530 F.2d 852, 855 (9th Cir.), cert. denied, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976). This is not, however, the rule in the Second Circuit. Moreover, as the District of Columbia Court of Appeals has noted, it is not clear that it much matters how reviewing courts label the test they apply. See Doe v. Hampton, 566 F.2d 265, 271 n.15 (D.C. Cir. 1977).

7. See note 4, supra.

8. See Doe v. Hampton, 566 F.2d 265, 272–73 (D.C. Cir. 1977); McClelland v. Andrus, 606 F.2d 1278, 1290–91 (D.C. Cir. 1979); Phillips v. Bergland, 586 F.2d 1007, 1010–12 (4th Cir. 1978); Grebosz v. United States Civil Service Comm'n, 472 F.Supp. 1081, 1085–87 (S.D.N.Y. 1979).

In short, the administrative record contains abundant evidence to support the FEAA's decision to sustain plaintiff's discharge for reasons of inefficiency due to poor typing and low productivity. Nothing therein supports plaintiff's contention that the decision was either arbitrary or capricious.

Plaintiff's second claim is that the refusal of the Merit Systems Protection Board (the "MSPB")[9] to grant her a hearing to present new evidence was arbitrary and capricious. This contention too is without support in law or the record. Two requests relating to the reopening of plaintiff's case were made on her behalf. On December 5, 1977, shortly after the FEAA rendered its decision, plaintiff's representative, Jensen, requested that the Appeals Review Board of the Civil Service Commission reopen her case for reasons allegedly meeting the criteria to warrant reconsideration.[10] In April 1979, Thomas Feeney, an attorney representing plaintiff, noting that a decision on the Jensen request was still pending, requested a hearing before the MSPB for the purpose of presenting new evidence in support of plaintiff's position, pursuant to the provisions of the Civil Service Reform Act.[11] Feeney's letter did not specify the nature of this "new evidence."

On May 3, 1979 the Board denied the Feeney request. It stated that since the administrative proceeding, including plaintiff's request for reopening and reconsideration, predated the Civil Service Reform Act, it was governed by the then-applicable regulations which did not provide for a hearing as of right before the Board. The Board's position was entirely proper. While under the Civil Service Reform Act an employee is entitled to a hearing before the MSPB,[12] section 902(b) of the Act states "[n]o provision of this Act shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act had not been enacted." Under the regulations in force prior to the Act which provided for an appeal to the Appeals Review Board there was no right to a hearing before the Board.[13] In sum, plaintiff was not entitled to the hearing requested by Feeney and there is no basis for her contention that the MSPB acted arbitrarily, capriciously or otherwise than according to law in refusing to grant a hearing to receive new evidence some 22 months after the FEAA's decision and in the absence of any offer of proof with respect to such evidence.

Accordingly, the Court concludes that the administrative decision to discharge plain-

---

**9.** The FEAA was reorganized into the Merit Systems Protection Board as of January 1, 1979 pursuant to the Civil Service Reform Act of 1978, Pub.L. 95–454 (Oct. 13, 1978).

**10.** 5 C.F.R. § 772.310(a) (1978) provided in part:

The Board may reopen and reconsider the decision when the party requesting reopening submits written argument or evidence which tends to establish that:

(1) New and material evidence is available that was not readily available when the decision of the appeals officer was issued;

(2) The previous decision of the appeals officer involves an erroneous interpretation of law or regulation, or a misapplication of established policy; or

(3) The decision of the appeals officer is of a precedential nature involving new or unreviewed policy considerations that may have effect beyond the case at hand.

**11.** Pub.L. 95–454 (Oct. 13, 1978).

**12.** *See* 5 U.S.C. § 7701 (1980); 5 C.F.R. § 752.-405 (1979).

**13.** 5 C.F.R. § 772.310(f) (1978) provided in part:

The Board shall review any request to reopen to determine whether a basis for reopening . . . has been established. . . . When the Board reopens a previous decision, the Board will determine and conduct whatever further investigation is necessary. *There is no right to a hearing before the Board.* (emphasis added)

On June 19, 1979, the MSPB denied plaintiff's request for reopening on the ground that none of the representations in the Jensen letter submitted in support of the request tended to establish any of the criteria for reopening but rather constituted an attempt to relitigate the merits of the FEAA decision. Plaintiff does not take issue with this determination but a review of both the request and the administrative record makes it eminently clear that the denial was entirely justified.

tiff was neither arbitrary nor capricious and was for such good cause as to promote the efficiency of the service. The defendants' motion for summary judgment is granted.

So ordered.