Donald **KRAUSE**, Plaintiff,

v.

**SMALL BUSINESS ADMINISTRATION and Merit Systems Protection Board, Defendants.**

No. 79 Civ. 5272.

United States District Court, S. D. New York.

Dec. 17, 1980.

O. John Rogge, New York City, for plaintiff.

John S. Martin, Jr., U. S. Atty., for the Southern Dist. of New York, New York City, for defendants; Thomas D. Warren, Asst. U. S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

These are cross-motions for summary judgment in an action commenced by Donald Krause, an employee of the Small Business Administration ("SBA"), to review a seven-day suspension from his position as a Supervisory Loan Specialist on the grounds that there was no evidential basis to support the suspension and that the failure to provide him with a trial-type evidentiary hearing upon his appeal to the Merit Systems Protection Board ("MSPB") violated his right to due process under the Fifth Amendment. The defendants, the SBA and MSPB, contend the suspension is valid on the grounds that the applicable procedures, which do not require a trial-type hearing in a seven-day suspension proceeding, were followed that these accord with due process of law, and that the decision to suspend plaintiff was supported by evidence and was neither arbitrary nor capricious.

Upon a word-by-word study of the administrative record, the Court concludes for reasons noted hereafter that the agency action must be upheld and that the procedures followed by the SBA fully satisfied the requirements of due process.

## I

Krause's suspension was prompted by a series of events surrounding a loan by the SBA to one Norma Fontane in connection with her purchase of "Norma's Restaurant," located in New York City across the street from the offices of the SBA. An anonymous letter to the SBA asserting that one of its employees, Ben Torrent, had a hidden ownership in Norma's Restaurant and that Fontane was "his girl friend" triggered an investigation by the Division of Security and Investigations ("S&I") into the circumstances whereby the loan which originally was approved by a loan committee of three in the sum of $25,000 was increased the same day to $40,000 without reconvening the committee that gave approval to the $25,000 loan.

As a result of the investigation, the Regional Director of the SBA advised Krause in a detailed letter that it was proposed to suspend him for thirty days pursuant to applicable civil service regulations upon the following grounds:

1. Falsification of the Loan Committee's minutes in violation of SBA regulations;

2. lack of adequate security regarding maintenance of a chronological list to assure that applicants were considered in the order in which they filed their applications;

3. failure to assure documentation of the loan file; and

4. appearance of conflict of interest and/or preferential treatment.

The basis for each charge was set forth in detail.

Bernard Kulik, Deputy Associate Administrator for Operations of the SBA was designated to consider and determine the charges. The letter proposing the thirty-day suspension advised Krause of his right to review the material upon which his proposed suspension was based, his right to reply in writing to the offenses advanced, his right to submit affidavits in support of his reply, and his right to the assistance of counsel in preparing the reply. Krause engaged counsel and upon his request was furnished with various documents including the S&I report. On November 21, 1978, Krause submitted his own written response to the charges, a written response by his attorney and the affidavits of five SBA employees. Thereafter, pursuant to his request, he and his lawyer met with Kulik at the latter's office in Washington, D.C. They were afforded the opportunity to and did speak to each of the charges. Following the meeting, Krause and his lawyer

wrote to Kulik thanking him for the opportunity to meet with him for a discussion of the charges and enclosing additional material relative to the charges. On February 23, 1979, Kulik rendered his decision which indicated that he had given careful consideration to all documents and written responses submitted by Krause and his attorney in resisting the charges, as well as their oral statements made at the Washington meeting. Kulik found the evidence supported three of the charges: (1) that Krause had falsified Loan Committee minutes, although without an intent to defraud; (2) that he had inadequately safeguarded the chronological list of applicants; and (3) that he had failed to ensure proper documentation of the loan file. Kulik concluded, however, that the evidence did not support the charge that Krause had created an appearance of preferential treatment or a conflict of interest.

Kulik decided that a thirty-day suspension was excessive and imposed a suspension of seven calendar days. He sent a copy of the agency decision to Krause which also informed him of his right to appeal to the MSPB and of his right to file a grievance under the SBA Grievance Procedure challenging the merits of his suspension, although no such grievance was filed.[1]

Krause, through his attorney, filed a notice of appeal to the MSPB and requested an evidentiary hearing purportedly under 5 U.S.C. § 7701(a) (1976) at which he could present the testimony of witnesses. He listed the names of six potential witnesses including those whose affidavits had previously been submitted and considered by Kulik. The appeal was assigned to the Seattle Field Office of the MSPB due to the heavy workload of the New York Field Office.

Krause's lawyer protested this assignment claiming that for all practical purposes it destroyed the effectiveness of an evidentiary hearing since his client could not afford the expense of travel for himself, his witnesses or his lawyer to Seattle. Dean Wright, Chief Appeals Officer of the Seattle Field Office, informed Krause and his attorney by letter that under the applicable regulation no right to an evidentiary hearing was provided in cases involving suspensions of less than thirty days, and that in such cases, the only issue subject to review on appeal was compliance with authorized procedures, unless it was claimed that the suspension was taken as a result of discrimination on account of race, color, religion, sex or other discriminatory conduct.[2] Wright observed that since the individuals Krause listed as proposed witnesses would have no knowledge of any claimed procedural deficiencies, no purpose would be served by an evidentiary hearing and thus there was no reason why the Seattle Office should not adjudicate the case. On June 21, 1979, the MSPB issued a written decision affirming the suspension and finding that the SBA had complied with the procedural requirements of 5 C.F.R. § 752.302 (1978) in effecting Krause's suspension.

## II

■ In addressing the substance of an agency's action, the scope of judicial review is narrowly confined. Review is based on the administrative record,[3] and the Court's role is to address, not the wisdom or good judgment of the agency's decision, but only whether the agency complied with applicable procedures and whether its actions were arbitrary or capricious.[4] Because a federal

1. Had plaintiff filed a grievance, an evidentiary hearing could have been held in the discretion of the examiner appointed to hear the grievance. SOP 37–71.

2. 5 C.F.R. § 752.304 (1978). Krause has not raised any charge of discrimination.

3. *See, e. g., Doe v. Hampton,* 566 F.2d 265, 272 (D.C.Cir.1977); *Polcover v. Secretary of Treasury,* 477 F.2d 1223, 1226 (D.C.Cir.), *cert. denied,* 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d

237 (1973); *Penna v. United States Army Corps of Engineers,* 490 F.Supp. 442, 443 (S.D. N.Y.1980).

4. *See, e. g., United States v. Professional Air Traffic Control Org'n,* 438 F.2d 79, 80–81 (2d Cir. 1970), *cert. denied,* 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 661 (1971); *McTiernan v. Gronousky,* 337 F.2d 31, 34 (2d Cir. 1964); *Penna v. United States Army Corps of Engineers,* 490 F.Supp. 442, 443–44 (S.D.N.Y.1980).

employee may be suspended only "for such cause as will promote the efficiency of the service,"[5] the reasons for a discharge must be rationally related to the good of the service for its decision not to be arbitrary or capricious.[6]

Krause does not claim that the procedures employed for his suspension were below statutory standards,[7] nor does he claim that the reasons advanced for his suspension lack a rational relationship to the efficiency of the service. He does, however, argue that the agency act of suspending him was arbitrary and capricious. Thus the Court considers separately each charge that was upheld and upon which the suspension was based.

### A. Falsification of the Loan Committee's Minutes in Violation of Regulations

■ As of February 1978, the operating procedure governing loan approvals required that a loan application be reviewed by an individual loan officer who was to sign his recommendation which then was submitted for consideration at a meeting of a three-member Loan Review Committee.[8] The procedure stresses that "[i]t is vital that the chairman [Krause] direct the meeting in a manner that will assure in-depth analysis" of a loan request and that committee members shall vote, with the majority prevailing, only "[a]fter a full discussion

of both the favorable as well as the unfavorable factors." The procedure also directs that the Committee minutes are to be an official record of what transpired in the meeting; while they need not be verbatim, they must cover the major points of discussion and must be signed by the chairman. The minutes of the meeting in which the Fontane loan was considered clearly do not meet these requirements.

Norma Fontane's initial application dated February 8, 1978 was for a $25,000 loan for a restaurant operation. The loan had been recommended for approval by Henry Staubach, the loan officer. On the morning of February 28, 1978, the Loan Committee, consisting of Krause, Staubach, and John Parowski, the portfolio management representative, met and approved the requested loan. Minutes of that meeting were prepared by Krause. Those minutes state that the approval was of a $40,000 loan and bear the initials of each member of the Committee, which Krause admits to have written,[9] indicating such approval. The circumstances attendant upon this incident were as follows: after the Committee had met and approved the $25,000 loan, a letter from the applicant requesting that it be increased to $40,000 was hand delivered by Ben Torrent to SBA officer Philip Stuart, who in turn brought it to Staubach's attention. Staubach conferred with Krause and the two

---

**5.** 5 U.S.C. § 7501(a) (1976); *cf.* 5 U.S.C. § 7503(a) (Supp. II 1978).

**6.** *See McClelland v. Andrus*, 606 F.2d 1278, 1290 -91 (D.C.Cir.1979); *Doe v. Hampton*, 566 F.2d 265, 272–73 (D.C.Cir.1977); *Penna v. United States Army Corps of Engineers*, 490 F.Supp. 442, 444 (S.D.N.Y.1980); *Grebosz v. United States Civil Service Comm'n*, 472 F.Supp. 1081, 1085–87 (S.D.N.Y.1979).

**7.** The applicable statutes and regulations are those that existed prior to the Civil Service Reform Act of 1978, Pub.L.No. 95–454, 92 Stat. 1119 (Oct. 13, 1978). That Act became effective on January 11, 1979, Pub.L.No. 95–454, § 907, 5 U.S.C. § 1101 note (Supp. II 1978), and contained a savings clause declaring that its provisions were inapplicable to any administrative proceedings pending as of its effective date. Pub.L.No. 95–454, § 902(b), 5 U.S.C. § 1101 note (Supp. II 1978). Krause received notice of his proposed suspension by letter dated November 13, 1978, and the administrative

proceedings surrounding his suspension were still pending on January 11, 1979. These proceedings are thus governed by pre-existing law. *Ellis v. Merit Systems Protection Board*, 613 F.2d 49 (3d Cir. 1980) (per curiam); *Kyle v. Interstate Commerce Comm'n*, 609 F.2d 540 (D.C.Cir.1980) (per curiam); *Penna v. United States Army Corps of Engineers*, 490 F.Supp. 442, 445 (S.D.N.Y.1980); 5 C.F.R. § 1201.191(b) (1980). That law may be found at 5 U.S.C. §§ 7501–7512 (1976) and 5 C.F.R. §§ 752.-301–.304 & 772.307(a) (1978).

**8.** Appendix 23, SOP 50–10.

**9.** Krause stated it was his normal practice when chairing the Loan Review Committee to put the initials of the other members of the Committee on the minutes indicating under an appropriate column their approval or disapproval of loans. T. 112.

agreed to the increase. This action was taken without reconvening the Loan Committee and without consulting Parowski, who at the meeting that morning, was dubious of a $25,000 loan and urged approval of a $15,000 loan as "more realistic" but finally agreed with the other two members on a $25,000 loan. Krause admits that the Loan Committee was not reconvened to consider the requested increase and further acknowledges that Parowski was not privy to the decision to grant Fontane's additional loan request, yet he recorded his initials as well as those of Parowski and Staubach in the approved column of the minutes which indicated that the loan, including the increase, had the unanimous approval of the Committee. This does not reflect, as the procedure requires, what transpired at the meeting; it not only falsely records Parowski's approval, but omits a major point of discussion at the meeting, to wit, the view that a $25,000 loan was questionable. The impropriety of Krause's conduct is not mitigated by his assertion that since he and Staubach, a majority of the Committee, had approved the request for an additional loan, there was no need to contact Parowski. Even assuming that a two-thirds majority favored approval of the additional loan, bypassing a meeting to consider the increased application undermined an important purpose of decision making by the Committee: to inform administrative action with the insight of collegial discussion. It offends common sense and experience for plaintiff to urge as he does that since the approval of two members of the Loan Committee of three was sufficient to increase the loan by $15,000 to $40,000, it was unnecessary to confer with Parowski, the third member who earlier that day had agreed to the $25,000 loan albeit with some misgiving as to that amount. One is moved to ask what is the purpose of the Loan Committee requirement, if one member can so cavalierly be excluded from consideration of a proposed

increase? Had Parowski been offered the opportunity, particularly in view of his expressed doubts about the original loan request, he may well have persuaded the majority not to grant the increase. In sum, the agency finding that Krause falsified records in violation of its rules [10] is abundantly, if not overwhelmingly, supported by evidence.

B. *Lack of Adequate Security Regarding Maintenance of a Chronological List*

█ As of February 1978, the procedures regarding the keeping of a chronological list [11] provide that because the SBA did not have enough direct loan money available to meet demand, a chronological listing of applicants was to be kept at a central point in each district office to ensure that applicants were not "taken 'out of line' when funds do become available." Obviously its clear purpose was to assure fair and impartial consideration of all applications.

Efforts to obtain the list during the S&I investigation proved fruitless with various excuses being given for its nonproduction. The investigators were unable to ascertain whether the Norma's Restaurant loan application had been expedited and given priority over those of other applicants. Although the regulation does not set forth the precise manner in which the list was to be kept and no formal method of keeping it was prescribed until after the events here in question, Krause was charged with its proper maintenance; indeed, he acknowledged responsibility for the list and participated in the decision to discard the first 200 names which allegedly included Fontane's name. Krause himself described the list as "a haphazard affair" and as "easily accessible to anyone." Torrent, who should not have had access to the list claimed to have placed Fontane's name on it. Moreover, even assuming that the portion of the list containing Fontane's name was destroyed innocently, as Krause claims, because of obsoles-

---

**10.** 13 C.F.R. § 105.509(a) (1978), in pertinent part provides that no employee shall:

(1) While acting as an SBA employee, make false records or accounts.

(2) Falsify any record, account, paper or other thing filed with or relating to Government or other public business.

**11.** Bulletin No. 14, SOP 50 10.

cence, its destruction reinforces the findings of inadequate safeguards in light of 13 C.F.R. § 105.509(a)(3) (1978), which provided that no SBA employee shall "[r]emove, obliterate or destroy any record, account, paper or other thing filed with or relating to Government or public business." Thus, the administrative finding that Krause maintained inadequate security surrounding the list finds ample support in the administrative record.

### C. *Failure to Ensure Documentation of the Loan File*

■ Krause admits that the only factual basis for granting the additional $15,000 loan request, other than the material accompanying the original request for a $25,000 loan, was Fontane's letter of February 28, 1978, hand delivered by Ben Torrent sometime after the initial request had been approved that morning. The sole justification for the additional request is an undocumented statement that a "major portion" of the restaurant equipment purchased from the SBA was not in proper working order. The letter continues with the conclusory statement that Fontane's evaluation of "the situation as a whole" finds the original request insufficient and that the business was "undercapitalized." Based solely on these self-serving and unsupported statements, the loan increase was granted. No investigation was made as to the verity of the claim that the purchased equipment was in disrepair, no inquiry was made as to the cost of the claimed repairs necessary to put the equipment in good working order, and no analysis or justification was made of the alleged need for increased capitalization. Indeed, as stated by Kulik in upholding this charge, "the entire justification for the increase appears to be the applicant's letter, which could just as well have requested a total loan of $35,000 or $50,000 as $40,000." The very fact that the letter was hand delivered by Torrent, fast upon the heels of the approval of the $25,000 loan, should

itself have alerted Krause to the need for investigation and documentation to determine that there was a factual basis for the requested loan increase, particularly since he knew of Torrent's relationship to Fontane. The SBA was fully warranted in its conclusion that the documentation for the loan increase was inadequate.

■ Under all the circumstances surrounding plaintiff's conduct with respect to the three charges that were sustained, it was reasonable for the SBA to impose a seven-day suspension; indeed, it was a judgment tempered with compassion and mercy. Under the limited scope of review, the Court holds that Krause's contention that the SBA's actions or findings were arbitrary or capricious is without foundation.

### III

Krause further contends that the procedures followed in imposing his suspension deprived him of due process of law. He does not dispute that these procedures fully met with the statutory requirements. According to the statutes and regulations then in effect, a federal employee facing suspension for thirty days or less was not entitled to a trial-type evidentiary hearing either before his employer or before the MSPB.[12] Krause argues that the failure of Congress and the Civil Service Commission to provide him with the full panoply of rights of a trial-type adversary proceeding deprived him of his due process right.

■ Whatever controversy may have existed in earlier times,[13] it is now hornbook law that one cannot be deprived of a protectible property or liberty interest without procedural due process safeguards. Krause claims that he had an enforceable expectation of continued and uninterrupted public employment by the SBA, subject to dismissal or suspension only "for such cause as will

---

12. 5 U.S.C. § 7501 (1976); 5 C.F.R. § 752.-301 .304 (1978).

13. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Graham v. Richardson,* 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534 (1971).

promote the efficiency of the service."[14] The government does not seriously dispute this, although it questions that it is a protectible interest since a seven-day suspension is "de minimis." The fact that the suspension was for only seven days and involved a week's loss of salary does not diminish Krause's constitutional right to protection, although it may be considered on the issue of the nature of the hearing to be accorded in protecting the right.[15] Just as a ten-day suspension from school "is not de minimis,"[16] so too a seven-day suspension with loss of pay may not be imposed in disregard of due process requirements.

■ Krause also contends, which the government disputes, that he has a liberty interest in the protection of his good name and reputation.[17] The government's position is that since the finding that Krause had falsified records with respect to the loan expressly absolved him from an intent to defraud, it did not imply dishonest or other errant behavior. This Court does not agree. A finding by a governmental agency that an employee falsified official records, whatever his intent, suggests to the average person dishonest conduct that reflects upon the employee's basic integrity. It is a stigma which tarnishes his employment record and which seriously impairs his opportunity for other employment should he decide to leave government service.[18]

Indeed, the adverse comment in plaintiff's employment record may hinder or defer normal promotion to a higher position with corresponding financial gain and other benefits. The government makes the further contention that since it has not published its charges against Krause, no liberty interest is implicated,[19] but the fact remains that it is a permanent blot on his record. Plaintiff's interest in protecting his name and record against the charge is sufficient to invoke the procedural due process guarantees of the Fifth Amendment.[20]

IV

Having found that plaintiff has both a property and liberty interest at stake with respect to the charges against him, the question remains "what process is due"[21] —whether the procedure that was applied, which gave Krause fair notice of the charge and an opportunity to be heard, was sufficient to satisfy the mandates of due process.

■ Due process is a relative term and the kind of a hearing that is required depends upon the particular situation at issue and the interests involved.[22] The term "hearing" is a "verbal coat of too many colors."[23] Due process " 'is not a technical conception with a fixed content unrelated to time, place and circumstanc-

14. 5 U.S.C. § 7501(a) (1976); *cf.* 5 U.S.C. § 7503(a) (Supp. II 1978).

15. *Goss v. Lopez,* 419 U.S. 565, 575–76, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975).

16. *Id.* at 576, 94 S.Ct. at 737.

17. *Paul v. Davis,* 424 U.S. 693, 702–10, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 573–74, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971).

18. *Paul v. Davis,* 424 U.S. 693, 702–10, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 573–74, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); *United States v. Lovett,* 328 U.S. 303, 316, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252 (1946).

19. *See Board of Curators v. Horowitz,* 435 U.S. 78, 83–84, 98 S.Ct. 948, 951, 55 L.Ed.2d 124 (1978); *Bishop v. Wood,* 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Longarzo v. Anker,* 578 F.2d 469, 472 (2d Cir. 1978).

20. *Cf. Doe v. United States Civil Serv. Comm.,* 483 F.Supp. 539, 570–71 (S.D.N.Y.1980).

21. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

22. *Cf. Child v. Beame,* 412 F.Supp. 593, 607 (S.D.N.Y.1976).

23. *United States v. Tucker Truck Lines, Inc.,* 344 U.S. 33, 39, 73 S.Ct. 67, 70, 97 L.Ed. 54 (1952) (Frankfurter, J., dissenting). *See also Mahan v. Howell,* 410 U.S. 315, 329, 93 S.Ct. 979, 987, 35 L.Ed.2d 320 (1973).

es' "[24] but involves "intensely practical matters."[25] Whether the administrative proceeding in a given situation meets constitutional standards of fair notice and an opportunity for hearing appropriate to the nature of the case depends upon an accommodation of the competing interests involved. This requires an evaluation of three factors:

"[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the safeguard and administrative burdens that the additional or substitute procedural requirement would entail."[26]

Thus, the Court considers each of these factors.

Obviously, plaintiff had a legitimate interest in continued and uninterrupted employment unless he engaged in conduct that warranted his supension. So, too, plaintiff, as previously noted, had an interest in protecting himself against a charge of stigmatizing conduct which, if sustained, may affect an opportunity for promotion within his agency or may impair an opportunity for outside employment, if he decides to leave governmental service.

On the other hand, the SBA, the plaintiff's employer, was entitled for the good of its service to enforce its regulations that required employees to keep accurate records of loan transactions. These regulations serve the public interest by giving assurance that the governmental agency is functioning effectively, competently and honestly.[27] While these important governmental interests require prompt and expeditious action, a full-scale trial with its full panoply of rights would necessarily result in delay and additional expense.

We next consider the risk of an erroneous deprivation under the procedures applied weighed against the probable value, if any, of additional or substitute safeguards. As already noted, the procedures that were applied afforded Krause substantial protections: timely and adequate notice of the charges against him; access to all evidence on which the charges were based; a full copy of the investigator's report; representation by counsel; the opportunity to respond in writing to the charges and to present evidence on his own behalf; an informal hearing before an official other than the one who had initiated the proposed suspension, yet with authority to reject or sustain the proposed action; a written decision based on the record with a detailed statement of the findings and the reasoning upon which it was based; and finally, a right of review as to whether the procedural regulations had been followed.[28] Krause contends that he was entitled to more: the right to subpoena and cross-examine witnesses and the full panoply of rights incidental to a formal trial-type hearing. But in the circumstances of this case, a full-scale trial would have afforded plaintiff no greater protection than that provided him under the procedure invoked. In response to the investigative report with its detailed charges, plaintiff submitted his own self-serving affidavit, a statement of his attorney and the affidavits of fellow employees who supported his position and sought to exonerate him of the charges. Did he intend at a trial-type hearing to cross-examine his own supporting witnesses to chal-

24. *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961) (*quoting Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 162-63, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)).

25. *Goss v. Lopez*, 419 U.S. 565, 578, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975).

26. *Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

27. *Cf. Arnett v. Kennedy*, 416 U.S. 134, 168, 94 S.Ct. 1633, 1651, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in the result in part).

28. *Cf.* 5 U.S.C. § 7501 (1976); 5 C.F.R. § 752.-301 .304 (1978).

lenge the verity of their statements surrounding the Fontane loan? It is true that he indicated an intention to call Parowski as a "possible adverse witness," but it was not disputed that with respect to the $15,000 increase in the loan approval Parowski was not consulted nor was the Loan Committee reconvened. This was acknowledged by plaintiff.

The determination of the charges required a value judgment as to the propriety of conduct based upon facts that were not in meaningful dispute.[29] There is no contention that cross-examination of witnesses might have revealed a different set of circumstances surrounding the Fontane loan. Short of the witnesses personally appearing before the hearing examiner, every scrap of available evidence to resist the proposed suspension was submitted on his behalf. Further, there is no contention that Kulik, the hearing officer, was not impartial.[30]

■ The procedures invoked to evaluate the charges provided Krause with a fair and meaningful opportunity to be heard and to present all evidence in rebuttal before his suspension was effected. Viewed against the substantial procedural protections that were accorded Krause—notice of the charges, access to the Government's investigation file, and the opportunity to present evidence, to be represented by counsel, and to be heard orally before the Trial Examiner—the probable value of a full dress trial would have been an exercise in futility and in no meaningful way would have provided additional safeguards to protect his property or liberty interests.[31] As the Supreme Court has stated, "the Due Process Clause has never been construed to require that the procedures used to guard against erroneous deprivation of a protectible 'property' or 'liberty' interest must be so comprehensive as to preclude any possibility of error." [32]

Even if some incremental gain in accuracy could be obtained by expanding procedural protections to include a trial-type hearing, the government's interest outweighs such considerations. It has been observed that in striking the appropriate due process balance "the government's interest, and hence that of the public, in conserving fiscal and administrative resources is a factor that must be weighed." [33] To grant a full evidentiary hearing in all cases where suspensions of thirty days or less (now fourteen days or less) [34] are

29. *Cf. Board of Curators v. Horowitz*, 435 U.S. 78, 90, 98 S.Ct. 948, 951, 55 L.Ed.2d 124 (1978); *see Mathews v. Eldridge*, 424 U.S. 319, 343-45, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976).

30. *Cf. Arnett v. Kennedy*, 416 U.S. 134, 199, 94 S.Ct. 1633, 1666, 40 L.Ed.2d 15 (1974) (White, J., concurring in part and dissenting in part).

31. *See Board of Curators v. Horowitz*, 435 U.S. 78, 82 90, 98 S.Ct. 948, 951, 55 L.Ed.2d 124 (1978); *Mathews v. Eldridge*, 424 U.S. 319, 334 49, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976); *Goss v. Lopez*, 419 U.S. 565, 581-84, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975).

32. *Mackey v. Montrym*, 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979); *see Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979) ("[T]here simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations."); *Cofone v. Manson*, 409 F.Supp. 1033, 1042 (D.Conn.1976) ("The due process clause does not require procedural safeguards as an end in themselves; there must be a demonstration that the safeguard in question will

measurably increase the protection afforded the right at issue.")

33. *Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976).

34. It should be noted that Congress recently reviewed the procedure used to suspend government employees, and in lowering the length of the suspension needed to establish a statutory right to a trial-type hearing from more than thirty to more than fourteen days, explicitly approved the procedures followed in Krause's case for suspension of fourteen days or less. *Compare* 5 U.S.C. §§ 7501 7514 (Supp. II 1978) *with* 5 U.S.C. §§ 7501-7512 (1976). In this light, it is easy to distinguish by the length of the suspension alone the case of *Keane v. Berry*, 416 F.Supp. 858 (D.Ariz.1976), in which the court concluded that due process requires a trial-type hearing before a probationary federal employee could be suspended for thirty days. *Id.* at 859 69. *Keane* is fully consistent with both the new procedural balance set by Congress and this Court's ruling in the instant case.

sought would not only impose a heavy financial burden upon the Government but would seriously interfere with the normal administrative functioning of the agency involved. While no precise figures have been tendered by either party to this litigation, we note the Supreme Court's comment, "that experience with the constitutionalizing of governmental procedures suggests that the ultimate additional cost in terms of money and administrative burden would not be insubstantial." [35] This view is readily supported in the light of the 2,800,-000 civilian employees currently in the Government work force.[36]

A weighing of the factors specified in *Mathews* compels the conclusion that the administrative procedures followed with respect to the charges leading to Krause's seven-day suspension fully accorded him due process. The Government's motion for summary judgment thus is granted. Krause's cross-motion for summary judgment is denied.

So ordered.

---

**35.** *Mathews v. Eldridge*, 424 U.S. 319, 347, 96 S.Ct. 893, 908, 47 L.Ed.2d 18 (1976).

**36.** Report to Congress of the United States by the Comptroller General 29 (1980).