### Myron G. FINEMAN, Plaintiff,

v.

### UNITED STATES POSTAL SERVICE, Merit Systems Protection Board, Eugene F. Guzzi and Frank J. Viola, individually and as employees of the United States Postal Service, and their assigns or successors in office, Defendants.

### No. 81 Civ. 4961.

United States District Court,
S.D. New York.

Feb. 3, 1983.

---

Cheryl L. Pollak, Susan P. Johnston, New York City, for plaintiff.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for defendants; Edward G. Williams, Asst. U.S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff was removed from his position with the defendant, United States Postal Service ("Postal Service" or "Service") as a Mail Processing Equipment and Maintenance Mechanic ("MPE") upon a charge of continuing absence from duty without official leave. The decision was affirmed following a hearing upon plaintiff's administrative appeal by the Federal Employees Appeals Authority ("FEAA") of the United States Civil Service Commission ("Appeal Board").[1]

Plaintiff by this action, wherein in addition to the Service and the FEAA he named as defendants his supervisors (collectively "defendants"), seeks judicial review of the Postal Service decision to terminate him. He seeks (1) reinstatement, (2) back pay and (3) other related relief. The parties cross move for partial summary judgment on items (1) and (2) pursuant to Fed.R. Civ.P. 56 based upon the administrative record.

Plaintiff commenced his employment with the Postal Service in May 1974 in the capacity described above. In 1977 he underwent a series of surgical procedures. As a result of his hospitalization and convalescence he did not work for a considerable period. During this time he was granted various sick leaves upon compliance with Postal Service regulations. These required him to submit with his request a Leave Authorization Form every thirty days, a certificate from his personal physician stating the nature of his illness and operations and the reasons for his requested sick leave.[2]

## PLAINTIFF'S REQUEST FOR LIGHT–DUTY ASSIGNMENT

Plaintiff returned to his job in the fall of 1977 and, based upon a note from one of his surgeons that he was to "refrain from heavy duty [work] for the next three months,"[3] requested and was assigned to light duty in November 1977 in the mail processing department, which was not his regular department. On May 17, 1978, plaintiff submitted a written request to be assigned to light duty within his regular craft. By letter dated the same day, Eugene F. Guzzi, the manager of the Mail Processing Department at the Bronx Post Office Facility where plaintiff was employed, advised plaintiff that his request must be supported by the required medical statement from a licensed physician. Plaintiff was then further advised that:

> Light duty may be granted on tours where such assignments are available. Should you fail to comply with the above or there is insufficient Light Duty assignments, you must take Annual, Sick or Leave Without Pay until you are fully recovered and able to perform your assigned duty, including work week tour.[4]

Several days thereafter plaintiff submitted the required medical statement.[5] On May 24, 1978, Guzzi approved plaintiff's request for light-duty assignment in his regular craft and he was ordered to report on May 30, 1978 to Mrs. Roberta Mack, Superin-

1. The FEAA is now the "Merit Systems Protection Board," and the Appeal Board is now comprised of the Merit Systems Protection Board and the Office of Personnel. Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111. This Act provides for the review of final personnel actions of the Merit Systems Protection Board by either the Court of Claims or a United States Court of Appeals. 5 U.S.C. § 7703(b)(1). A savings clause, however, makes the Act inapplicable to personnel actions, such as plaintiff's, pending on January 11, 1979, the effective date of the statute. 5 U.S.C. § 1101. See Walker v. Washington, 627 F.2d 541, 544 n. 4 (D.C.Cir.), cert. denied, 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 292 (1980).

Since this action was pending on January 11, 1979, this Court has jurisdiction to review the decision of the Merit Systems Protection Board which affirmed the decision of the Postal Service to discharge plaintiff.

2. Postal Service Employee and Labor Relations Manual § 513.36 (Oct. 1978).

3. Administrative Record, Part II at 162 (hereinafter "A.R. II").

4. Administrative Record, Part I at 49 (hereinafter "A.R. I").

5. See A.R. I, at 48.

tendent, Building Maintenance, at the Bronx General Post Office.

The basic issue to be decided upon these cross motions rests essentially upon events commencing on May 30, 1978, when plaintiff reported to Mrs. Mack. This observation is made since both at the administrative appeal hearing and on this motion plaintiff and his counsel discursively digress from the basic charge which led to his dismissal—to wit, that he was "continuously absent from duty without permission since June 1, 1978" and had not submitted "a properly documented Medical note" or "reported for work as ordered." [6]

### EVENTS ON MAY 30 AND THEREAFTER WHICH LED TO THE FILING OF THE CHARGE

On May 30, upon reporting to Mrs. Mack, plaintiff was assigned to dry mop the work floor with a group of other employees, but he refused, stating that he was supposed to get an office assignment. He did not accept the assignment but consulted with his union delegate. It is undisputed that he did not work that day. [7]

The next day, May 31, he reported late for work and, as on the previous day, was instructed by his supervisor to sweep the floor with a dry mop. After working a short period, plaintiff complained about dizziness and of his hand shaking. His supervisor directed him to the Medical Unit where a doctor examined plaintiff and certified that he was fit for light-duty assignment. Upon reporting back to his supervisor, he was instructed to continue with light-duty assignment. Although there is a difference between the supervisor and the plaintiff as to the nature of the assigned duty, the fact is that he did not perform any work the rest of the day.

Plaintiff did not report for duty the next day, June 1. Instead, he telephoned the Postal Service timekeeper and requested

leave without pay. In response, the Postal Service sent plaintiff the usual leave absence form, P.S. Form 3971. It was the same form which plaintiff had submitted on his prior applications for leave which had been granted. It instructs the employee that he is required to submit a medical certificate signed by a doctor

> giving diagnosis, prognosis, dates of treatment and probable date of return, or satisfactory evidence substantiating absence, or report for duty at once. Failure to comply with above instructions within seven (7) days of your receipt of this letter will result in recommendation for your removal from the Postal Service. [8]

It is not disputed that plaintiff received this notice.

On June 3, plaintiff wrote to Guzzi, stating that he had reported as directed to the Buildings Services Custodial Department, and had begun the assignment, but became ill as a result and that "[i]n accordance with current medical statements I submitted to your office I cannot perform this assignment since it requires continuous physical exertion. Please reassign me to a less physically demanding position which allows sitting, if only periodically." [9] In response, Guzzi wrote a letter dated June 6, wherein he stated:

> On May 17, 1978, you requested and received assignment to light duty within your craft. In complying with your request, this office gave total consideration to all medical documents submitted by you. The duties that were assigned you were well within the guidelines set forth in these documents.
>
> There are no light duty assignments available that would be less demanding than those given you in the past. [10]

In purported compliance with the Service's request, thereafter plaintiff sent to the Postal Service a statement by Dr. Hyman A. Asher dated June 8, 1978, which reads:

---

**6.** A.R. I at 29.

**7.** A.R. II at 53, 75 and 96–97.

**8.** A.R. I at 40.

**9.** A.R. I at 39.

**10.** A.R. I at 38.

Diagnosis—Hypertension—Recurrent Nasal Hemorrhage

The above named is physically incapable of doing heavy manual labor with prolonged standing.

H. Asher [11]

Plaintiff was advised by Postal Service letter dated June 9 that the doctor's statement was inadequate, as follows:

your Doctor's note does not state that you are unable to work, therefore, we are requesting that you submit another note stating you are under physician's care and probable date of return to duty. Please comply with the above instructions.[12]

Plaintiff did not comply with the request. Instead, he wrote on June 11 that his doctor's statement (referred to above and already rejected), as well as prior medical statements by his doctors:

all concur on the necessity of allowing me to sit periodically. However you and the supervisors have prohibited this under the recent conditions of reassignment. Additional medical statements from my physicians would be redundant since these limitations have already been presented to your office.[13]

In response, the Postal Service by certified letter dated June 15 again reminded plaintiff that his request of May 17, 1978 for light duty had been granted effective as of May 30, 1978, and

ordered [him] to report for duty immediately and failure on your part to report for work will necessitate this office to charge you with AWOL and recommending your removal from the Postal Service.[14]

Plaintiff did not report for duty. Instead he returned the aforesaid direction to report for duty with an appended note dated June 16, which referred to previously submitted medical statements and observed "[s]ince your office has neither accepted my statements nor complied with my request for a proper light duty assignment I have contacted Postmaster Viola concerning this matter."[15] The latter reference was to a letter dated June 14, written by an attorney then representing plaintiff, to the Postmaster in charge of The Bronx General Post Office. The attorney sought a meeting with the Postmaster, alleging that plaintiff had been subject to harassment and had been assigned duties inconsistent with his documented medical condition. The Postmaster responded that the Service was obligated to deal with plaintiff's designated union representative and that contrary to what plaintiff may have told his attorney, he had not been ordered to perform heavy duty assignment, that total consideration had been given to all submitted medical statements and the work assignments had been tailored to meet the criteria specified by his physicians.[16] Plaintiff himself added to this controverted exchange by letter dated July 2 disputing the Postmaster's latter statement and indeed charged it was "a complete lie."[17]

## THE FILING OF THE CHARGES AND THE APPEAL

It was abundantly clear to the Service that plaintiff had no intention of complying with the direction that he report for duty or submit the required medical information. Thereupon, department supervisors, upon a detailed review of the events commencing on May 30 and thereafter, and upon reference to his prior disciplinary record, noted that since plaintiff's assignment "to light duty in this department, at his own request, he has refused to comply with any verbal or written orders given him."[18] In view of his past and present record, they recommended

11. A.R. I at 45.

12. A.R. I at 37.

13. A.R. I at 36.

14. A.R. I at 35.

15. A.R. I at 34.

16. A.R. II at 167.

17. A.R. II at 168.

18. A.R. I at 32–33.

his removal from the Postal Service. A notice of charge and of his rights dated July 11, 1978 was sent to plaintiff and he was advised that he would be removed from the Service in thirty days if the charge were sustained, in which event his enumerated prior disciplinary record would be considered in determining the appropriate disciplinary actions.[19] His written response[20] was given consideration, but notwithstanding his explanation the Postmaster designee found that the charge was fully sustained and warranted removal, which was made effective August 11, 1978. Then followed the appeal to the FEAA.

The appeal challenged both the charge which was the basis for his removal and the three elements of his past record. After an extensive hearing at which plaintiff testified and where he was represented by counsel who cross examined witnesses called by the Service, including his supervisors who preferred the charges and recommended his removal, the Appeal Board affirmed the decision to remove plaintiff. It found that all required procedures had been complied with and that the decision to remove plaintiff was "not arbitrary, capricious or unreasonable, but was for such cause as to promote the efficiency of the service."[21]

■ The scope of judicial review of a federal agency's decision to terminate an employee is narrowly confined.[22] Review is based solely upon the administrative record. The Court's function does not authorize it to pass upon the wisdom or the judgment of the agency's decision simply because it may be in disagreement. The agency decision must be sustained unless it appears it is arbitrary or capricious and the reasons for the discharge are not rationally related to the efficiency of the Service.[23]

■ The Court, upon a word-by-word reading of the transcript of the appeal, the exhibits attached, and the entire record, concludes that the agency determination that plaintiff was continuously absent from duty without leave beginning June 1, 1978 must be sustained. The recital of evidence which led to the charge leaves no room to doubt that the plaintiff was willful and resistant to reasonable requests and directions of his supervisors and engaged in conduct which could not be countenanced if efficiency of service was to be maintained. Indeed, for those charged with responsibility for the effective administration of service to have ignored plaintiff's intransigent attitude when directed either to report for duty or to supply the requisite medical certificate would have been a dereliction of duty. As the Appeal Board noted, plaintiff's subjective determination concerning his job duties was not an excuse for refusal to report for duty and he was obligated to do so unless his claimed illness was substantiated by satisfactory medical evidence.[24] Although plaintiff knew he was required to submit such evidence and despite three specific requests to do so after his absence on June 1, 1978, he failed to comply.[25]

The Appeal Board expressly found that Dr. Asher's note of June 8 did not contain, as the rules required, any reference to plaintiff's inability to work and was not responsive to the agency's request for additional documentation following his absence on June 1. A mere reading of the doctor's note at once discloses that indeed it did not contain the required information.

Plaintiff's contention that the defendants acted on a "misperception of undisputed fact"[26] in that both the Postal Service and the Appeal Board disregarded the May 17,

**19.** A.R. I at 29–30.

**20.** A.R. I at 28.

**21.** A.R. I at 78.

**22.** *Penna v. United States Army, Corps of Engineers,* 490 F.Supp. 442, 443 (S.D.N.Y.1980).

**23.** *Mizerak v. Adams,* 682 F.2d 374, 376 (2d Cir.1982); *McTiernan v. Gronouski,* 337 F.2d 31, 34 (2d Cir.1964); *Penna v. United States*

*Army, Corps of Engineers,* 490 F.Supp. 442, 444 (S.D.N.Y.1980).

**24.** A.R. I at 77.

**25.** A.R. I at 77–78.

**26.** *Mizerak v. Adams,* 682 F.2d 374, 375 (2d Cir.1982).

1978 Guzzi letter quoted above, which plaintiff argues authorized him to take leave without pay, is without substance. The argument not only disregards the plain language of the letter, but ignores the events commencing on May 30 and those that followed upon which the charge against him was based. It disregards the fact that when he failed to report for duty on June 1, but telephoned in and requested sick leave without pay, he did not submit, as required by the Service, the appropriate medical certificate. Moreover, this failure was specifically called to his attention on several occasions, and he was advised it could lead to his removal.

Similarly without substance is plaintiff's claim that the Appeal Board decision was arbitrary and capricious because it failed to consider de novo the propriety of the light-duty assignments on May 30–31, 1978. That was not the function of the Appeal Board nor is it the function of this Court.[27] Plaintiff was well aware of his right to challenge the assignment through the Union grievance procedure but failed to do so. The Appeal Examiner did note plaintiff's contention that the assignment did not constitute "light-duty." However, he correctly ruled that the crux of the case before him was

> not the nature of [plaintiff's] assignment, or whether he should have been permitted to have another assignment. Such a matter is for determination by the agency, and is subject to whatever grievance procedures may be available for consideration of this issue. The issue before us is whether [plaintiff] was absent without leave.[28]

On this basic issue a full de novo hearing was conducted, following which the Appeal Board determined that the charge was sustained, a finding that is supported by substantial evidence. Similarly, plaintiff's attempt on this motion to raise an issue that in fact the May 30–31 assignments were not

light duty is irrelevant. This is not a determination to be made by this Court. Any such challenge as to the propriety of the light-duty assignment should have been resolved through the appropriate grievance procedure.

Plaintiff also raised an issue with respect to his past disciplinary record, which he contends vitiate the decision to discharge him. In the notice of proposed action to remove him from the Service, plaintiff was advised that three elements of his past record would be considered in determining the disciplinary action to be imposed if the charges were sustained. These were (1) a Letter of Warning issued on September 28, 1976 for (a) failure to follow instructions of a lead mechanic, (b) disrespect to a supervisor, and (c) poor efficiency and performance of his duties as an MPE; (2) a Letter of Warning on January 5, 1978 for working in an unsafe position and failing to obey orders; and (3) a letter of suspension on January 25, 1978 for (a) failure to obey an order, (b) malingering and (c) creating a disturbance in the work area.[29] The suspension was for fourteen days but after it was grieved by the Union on plaintiff's behalf, and then appealed, it was modified to four days.

In this instance, too, the plaintiff sought with respect to each previously determined disciplinary action a de novo hearing before the Appeal Board. In response to the Postal Service notice of proposed removal, plaintiff's former attorney notified the Board that plaintiff disputes the "validity" of the "alleged elements of his past record."[30] The hearing officer considered the contention but denied the request for de novo consideration of the disciplinary charges. In this he was clearly correct. The disciplines imposed were part of his work record. Consideration of his past disciplinary record with respect to the current adverse action against him was authorized under Civil Service Regulations

27. *Penna v. United States Army, Corps of Engineers,* 490 F.Supp. 442, 444 (S.D.N.Y.1980).

28. A.R. I at 76–77.

29. A.R. I at 29.

30. A.R. I at 53–54.

provided they met specific procedural criteria: first, the employee was informed of the action in writing; second, the employee was given an opportunity to dispute the action by having it reviewed on the merits by an authority different from the one that took the action; and third, the action was made a part of the record.[31] Thus, the only issue as to the past disciplinary action was whether the requisite procedural criteria had been met with respect to each of the prior charges before they could be considered with respect to the current charge in the event it was sustained.

The Appeal Board found that in the instance of each action the Civil Service requirements had been met. Additionally, and in greater detail, the findings continue:

> It is important to note that the appellant is attacking the merits of the action taken which he disputed in grievance procedures within the agency. He makes no contention as to his receipt and knowledge of the prior disciplinary record, which is duly documented in the record before us. Under Commission regulations, when an employee's prior record is at issue in an appeal, and that record complies with the Commission's regulations, ... which included an earlier opportunity for review of the merits of the prior record, the appellate review afforded to the prior record is limited solely to a determination as to the validity of the action, and to whether the disciplinary action, which is the basis for the prior record, was unreasonable, arbitrary or capricious. Based upon our review of the documented prior record, we are unable to reach such a conclusion, and find that as a matter of record the prior record constitutes a valid reason for the action taken in this case.[32]

The Appeal Board then made a further finding that the proper procedure had been complied with as to the instant charge.[33] The finding is beyond challenge and thus, under the circumstances, plaintiff was not entitled to a de novo hearing on appeal of the previously determined charges and consideration of his prior record was proper with respect to the current charge.

Plaintiff next urges that his dismissal must be set aside because the Hearing Examiner violated his right to due process of law. This is based upon a contention that prior to the hearing of the Administrative Appeal, the Hearing Examiner who presided at the appeal engaged in an ex parte conversation with a Postal Service representative, during which plaintiff's prior record was discussed. This charge of improper conduct by the hearing officer is, upon this record, as shallow as it is unfair. It is without the slightest evidential support. It appears that after plaintiff's attorney had notified the Appeal Board that he planned to attack the merits of the prior record, the hearing officer made a telephone request to a Postal Service Relations Assistant, to which the latter responded as follows:

> As per your telephone request of October 20, 1978, concerning the above referenced individual, enclosed please find PS Form 50, dated April 13, 1978, reflecting a modification of a 14-Day Suspension to 4 days.
>
> With regard to the Letter of Warning of September 28, 1976, records at this installation do not indicate that it was rescinded. Grievance was appealed to Step 1 of the Grievance Procedure, and was denied. No further appeal was made. Copy of charges and Step 1 procedure are attached.[34]

Neither the telephone request nor the response justifies the charge that the Appeals Officer improperly discussed "some or all of the prior disciplinary actions"[35] so that it deprived plaintiff of his procedural

---

**31.** Federal Personnel Manual § 54–36 (Supp. 752–1). *See also* 5 U.S.C. § 7503; 5 C.F.R. 752.203.

**32.** A.R. I at 74.

**33.** A.R. I at 74–75.

**34.** A.R. I at 61.

**35.** Plaintiff's Memorandum in Support of Cross-Motion for Partial Summary Judgment at 41.

right to due process of law. As already noted, plaintiff's counsel had informed the Appeal Board in his notice of appeal that his client challenged the validity of the prior record. The simple fact is that the so-called "ex parte" communication was part of the official record,[36] and its existence and contents known to plaintiff and his attorney prior to the hearing.[37] In the light of all that transpired at the hearing on the subject of the prior disciplinary charges, there is not the slightest basis for the claim that the telephone request for the very information that plaintiff intended to challenge upon the appeal was improper or, more important, that it was prejudicial in any respect. The cases cited by plaintiff's counsel on the evils of ex parte communications by or with judicial or hearing officers[38] are so far removed from the factual content of the instant case as not to merit discussion.

■ Finally, plaintiff contends that removal from service was the extreme penalty and so entirely disproportionate to the offense charged that it must be stamped as arbitrary and capricious. Whatever this Court's view of the penalty, the agency determination must be upheld unless it is so harsh as to amount to such an abuse of discretion that upon all the facts it can be said to be arbitrary and capricious.[39] As the record demonstrates, the basic events commencing on May 30, 1980 which led to the filing of the charges were marked by intransigent and obstinate conduct which was bound to be disruptive of the efficiency of the service. They were not isolated incidents; there had been the previous infractions which resulted in disciplinary sanctions. Under all the circumstances and upon the entire record, it cannot be said that the penalty was arbitrary and capricious.

**36.** A.R. I at 61.

**37.** Plaintiff's Memorandum in Support of Cross-Motion for Partial Summary Judgment at 44.

**38.** See, e.g., Ryder v. United States, 585 F.2d 482, 483, 218 Ct.Cl. 289 (1978); Camero v.

The defendants' motion is granted. The plaintiff's motion is denied.

United States, 375 F.2d 777, 179 Ct.Cl. 520 (1967).

**39.** Giesler v. Merit Systems Protection Board, 686 F.2d 844, 849 (10th Cir.1982); Phillips v. Bergland, 586 F.2d 1007, 1012 (4th Cir.1978); Boyce v. United States, 543 F.2d 1290, 1292, 211 Ct.Cl. 57 (1976) (and cases cited therein).